The People of the State of Illinois, Plaintiff-Appellee,
v. Albert Edward Nordstrom, Defendant-Appellant.

Gen. No. 65–88.

Second District.

July 13, 1966.

Rehearing denied August 31, 1966.

James B. Sloan, of Chicago, for appellant.

Bruno W. Stanczak, State's Attorney, of Waukegan (Jack Hoogasian, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The defendant, Albert Edward Nordstrom, was convicted on July 29, 1964, for misbranding drugs, in that he knowingly and unlawfully sold a dangerous drug at retail without a prescription, contrary to the provisions of sections 17 and 29 of the Uniform Drug, Device and Cosmetic Act. (Ill Rev Stats 1963, c 111½, pars 417 and 429.) The offense was a second offense, yet the defendant was placed on probation on August 12, 1964. On April 30, 1965, his probation was revoked; he was sentenced to the penitentiary for a term of not less than one year and six months and not more than two years; and he filed notice of appeal on April 30, 1965, to review both the original judgment of guilty and the order revoking probation.

The State contends that the defendant has lost the right to review his original judgment by failure to file a notice of appeal therefrom within thirty days after August 12, 1964—the date the probation was granted. This threshold question will be first considered.

The pertinent sections of the Criminal Code provide:

> "The judgment of guilty entered prior to the admission of defendant to probation shall be a final judgment subject to review under Article 121 of this Code."

172

"If the defendant is admitted to probation a judgment of guilty shall be entered."

Sections 117–1(d) and 118–1(d) of the Code of Criminal Procedure of 1963 (Ill Rev Stats 1963, c 38, pars 117–1 (d) and 118–1(d)).

The procedures for review under article 121 of the Code were in part superseded and replaced by Supreme Court Rule 27 (Ill Rev Stats 1965, c 110, par 101.27) which became effective in its final form on January 1, 1964. Supreme Court Rule 27(7)(a) provides:

"Appeals from the trial court shall be perfected within 30 days from the entry of the order or judgment from which the appeal is taken, provided that if the appellant applies for probation or files a motion for a new trial or in arrest of judgment, the appeal *shall be* perfected within 30 days after the ruling of the court on the petition for probation or the denial of the motion. Except as provided in the next paragraph, no appeal may be taken from a trial court to a reviewing court after the expiration of 30 days from the entry of the order or judgment from which the appeal is taken." (Emphasis ours.)

Subparagraph (b) of Rule 27(7) provides for an appeal after the expiration of 30 days and within 14 months from the entry of the judgment or order appealed from, upon the filing of a petition within one year from the entry of such order of judgment, which petition must show a meritorious claim and the absence of culpable negligence in the failure to prosecute the appeal within 30 days. No such petition was filed and it is not claimed that defendant is before this court under the provisions of this subparagraph.

There has long been confusion as to whether and when an appeal will lie if probation is granted. Prior

173

to the adoption of the present Criminal Code, it was thought that the granting or denying of probation to an accused rested solely in the discretion of the trial court (The People v. Stover, 317 Ill 191, 196, 197, 148 NE 67 (1925)); that upon the entry of an order for probation, the cause stood continued in the trial court during the probationary period and a reviewing court was without jurisdiction to hear any phase of the matter (The People v. Mayfield, 414 Ill 146, 148, 111 NE2d 164 (1953)); and that the defendant had waived his right to appeal a conviction if he accepted probation (Committee Comments, SHA ch 38, § 117–1). Such views were finally put to rest in 1965 by the decision in The People v. Sims, 32 Ill2d 591, 593, 208 NE2d 569 (1965). Presently an appeal will lie from the original judgment of conviction after probation is granted, and from an order revoking probation, if perfected according to the provisions of applicable statutes and court rules. The issues are separate and independent. An accused should not be coerced into waiving an appeal by accepting probation.

As to when the time for an appeal starts to run, there likewise has been uncertainty. In the absence of a statute providing otherwise, an appeal will lie only from a final judgment. The Village of Niles v. Szczesny, 13 Ill2d 45, 48, 147 NE2d 371 (1958); Eva Peach, etc. v. Lester Peach, et al., 73 Ill App2d 72, 218 NE2d 504 (2nd Dist 1966); 24 CJS, Criminal Law, § 1643, page 240. In criminal cases, the sentence, in the legal sense, is usually treated as synonymous with final judgment. The People v. Becker, 414 Ill 291, 295, 111 NE2d 491 (1953). In Illinois, it has been the practice, both prior to the adoption of the Code (The People v. Collins, 353 Ill 468, 471, 187 NE 450 (1933); The People v. Andrae, 295 Ill 445, 454, 129 NE 178 (1920)) and under the Code (Ill Rev Stats 1965, c 38, § 118–1(d)), to grant probation before sentence is imposed. If the defendant is admitted to probation, sentence is not then imposed.

174

This has led to the contention that if probation is granted there is no final judgment from which an appeal will lie and, hence, the period for appealing a conviction cannot start to run until sentence is imposed. In Toyosaburo Korematsu v. United States, 319 US 432 (1943), the Supreme Court considered the question. Previously in Berman v. United States, 302 US 211 (1937) it had decided that an appeal would lie where sentence had been imposed but was suspended, and the defendant placed on probation. There was language in Berman, however, which indicated that the court accepted the proposition that in a criminal case the sentence was the final judgment, and thus by implication, the opinion suggested that an appeal would not lie if probation were granted prior to the imposition of a sentence.

In Korematsu, probation was granted prior to the imposition of sentence; and the court held that the judgment of guilt was equally final when the imposition of the sentence itself was suspended and the defendant placed on probation. The court noted that the probationary surveillance is the same whether or not sentence is imposed; that in either case the granting of probation follows a finding of guilt and is an authorized mode of mild and ambulatory punishment intended as a reforming discipline; that whether or not sentence is imposed in the granting of probation, the liberty of one "judicially determined to have committed an offense" is abridged in the public interest; and that probation is intended to be a means to restore offenders who are good social risks to society and to afford the unfortunate another opportunity by clemency. The court concluded on page 435, quoting in part from its prior decision in Berman, as follows:

"'In criminal cases, as well as civil, the judgment is final for the purpose of appeal "when it terminates the litigation . . . on the merits" and "leaves

175

nothing to be done but to enforce by execution what has been determined." ' . . . Here litigation 'on the merits' of the charge against the defendant has not only ended in a determination of guilt, but it has been followed by the institution of the disciplinary measures which the court has determined to be necessary for the protection of the public."

■ ■ For a judgment to be final and appealable, it must terminate the litigation between the parties on the merits of the cause. It need not dispose of all the issues presented by the pleadings, but it must be final in the sense that it disposes of the rights of the parties, either upon the entire controversy or some definite part thereof. The Village of Niles v. Szczesny, 13 Ill2d 45, 48, 147 NE2d 371 (1958); Eva Peach, etc. v. Lester Peach, et al., 73 Ill App2d 72, 218 NE2d 504 (2nd Dist 1966). Certainly the judgment of guilty terminates the cause on the merits, and it is a final adjudication that the °offense charged in the indictment was, in fact, committed by the defendant. If an accused is found guilty or enters a plea of guilty and is granted probation, the execution of the judgment is the continuance of the probation. We hold that the judgment of guilty is a final judgment and the time within which to perfect an appeal therefrom is not extended to such time as when the probation may be revoked.

It is assumed in the Committee Comments to § 117-1 (SHA ch 38, § 117-1) that subsection (d) provides for an appeal from an interlocutory order, since final judgment is not rendered until sentence. We agree that subsection (d) provides for an appeal from a judgment of guilty, but believe that the language of said subsection clearly provides for an appeal from such judgment as a final judgment or order and not as an appeal from an interlocutory order of guilty when probation is grant-

176

ed. The language is, "The judgment of guilty . . . shall be a *final* judgment . . . ." (Emphasis ours.)

■ If there was doubt as to when the 30-day period within which to appeal from the original judgment of guilty begins to run, Supreme Court Rule 27(7)(a)— adopted subsequent to the Code of Criminal Procedure of 1963—is now explicit. It provides that an appeal "shall" be taken within 30 days from the entry of judgment. It then adds a provision that if appellant applies for probation, the appeal "shall" be perfected within 30 days from the "ruling" on the petition for probation. The language is mandatory and provides for an appeal upon the "ruling" on the petition—not merely upon the denial of the petition. Thus, an accused must perfect an appeal from the judgment of guilty within 30 days from the entry thereof unless the accused applies for probation, and if such application is made, he must then perfect an appeal from the judgment of guilty, as well as from the order granting or denying probation, within 30 days from the date of the order which rules on the petition for probation.

In the same sentence, the Rule provides for an appeal from a motion for a new trial or in arrest of judgment only upon the "denial" of the motion. We would not be warranted in assuming that the Supreme Court meant to limit the time for appeal only if the petition for probation were denied and employed the word, "ruling" inadvisedly or unintentionally. In the case at bar, we hold that the defendant did not file notice of appeal in apt time to review his original judgment of guilt and that we cannot now review such judgment.

The defendant has also appealed from the order revoking his probation and the terms of imprisonment as permitted by section 117–3(e) of the Code and Supreme Court Rule 27(16). He contends that certain evidence, seized at the time of his arrest and when on probation,

was improperly seized and should not have been admitted into evidence at the revocation hearing.

At the hearing on the motion to suppress, there was testimony that Inspector Ware went to the defendant's drugstore on February 9, 1965, and purchased some dangerous drugs without a prescription; that he paid $40 for these drugs with marked bills; that he returned on the following day with other officers; that the other officers waited outside while Ware entered the store and purchased additional dangerous drugs without a prescription, for which he paid $275; that the drugstore was on the second floor of a building; that as Ware was leaving the drugstore he gave a signal at the door; and that other officers approached and arrested the defendant at the doorway.

The officers then searched the surrounding area of the premises, recovered the $275, a portion of the $40 paid to the defendant the previous day, a quantity of drugs, and certain receipts and papers. The drugs confiscated bore labels stating that federal law prohibited their being dispensed without a prescription. The defendant's license to be in possession of such drugs had previously been revoked. A state pharmaceutical inspector was present directing which drugs to confiscate. The money seized in defendant's store was introduced in evidence.

The defendant does not contend that his arrest was unlawful. An officer making a lawful arrest has the right to search the person arrested. In a proper case, the right to search extends beyond the person and to the surrounding area. The permitted scope of such a search is that which is reasonably necessary to protect the officers from attack, to prevent escape, or to discover the fruits of the crime or the means by which it was committed. The People v. Alexander, 21 Ill2d 347, 352, 172 NE2d 785 (1961); The People v. Burnett, 20 Ill

178

2d 624, 625, 626, 170 NE2d 546 (1960); The People v. Van Scoyk, 20 Ill2d 232, 235, 170 NE2d 151 (1960); The People v. Heidman, 11 Ill2d 501, 508, 144 NE2d 580 (1957); The People v. Tillman, 1 Ill2d 525, 529, 116 NE2d 344 (1954).

██ ██ The multitude of cases involving the question of the reasonableness of searches made incidental to a lawful arrest, do not lay down a uniform rule as to the scope permitted. Rather, the cases established that the critical issue in each case is whether the nature of the offense and surrounding circumstances warranted the search made. The People v. Watkins, 19 Ill 2d 11, 18, 166 NE2d 433 (1960). Subsequent to his lawful arrest, the defendant refused to disclose the whereabouts of the fruits of the crime—the money. Under such circumstances, we believe that the officers were justified in searching the immediate area—behind the counter and in the cash register on the premises—to recover the money. Such a search was well within the limits of the right to search after a lawful arrest. The People v. Van Scoyk, supra, 235, 236.

██ ██ The defendant also contends that the manner in which the hearing on the revocation of probation and the motion to suppress evidence were conducted, when considered in their entirety, constituted a denial of due process. We disagree! On the motion to suppress, the State called its witness first. The defendant now contends that this was error. Aside from the important fact that no objection was voiced to this procedure, the trial court apparently treated the motion to suppress the evidence in the same manner as a motion to suppress a confession. (Ill Rev Stats 1965, c 38, § 114–11(d).) By directing the State to proceed first, the trial court obviously assumed—though erroneously—that the State had the burden of establishing that the evidence was lawfully seized. While this assumption as to the burden

179

of proof was incorrect (Ill Rev Stats 1965, c 38, § 114–12(b)), it can hardly be said to have prejudiced the defendant.

■ The defendant also now contends that the incorporation of the testimony taken on the motion to suppress the evidence into the hearing on the revocation of probation was a denial of due process. However, the defendant made no objection and stated that since there was no jury it would shorten the proceedings and only requested that he be given leeway in cross-examination of these same witnesses. It also appears that either the transcript of the previous testimony was read to defendant's counsel to assist him in his cross-examination, or he denied the need therefor. Defendant agreed to this manner of presenting the evidence and cannot now complain. The People v. La Bostrie, 14 Ill2d 617, 619, 153 NE2d 570 (1958).

■ The defendant complains of the failure of the State to call as a witness or to identify at the hearing, the informant who accompanied the agent on February 9, 1965—when he made the first purchase. Defendant cites Thompson v. The People, 410 Ill 256, 102 NE2d 315 (1951) for the proposition that the failure of the State to call a competent witness with material testimony is a denial of due process. In Thompson, however, the defendant sought to subpoena two individuals, and delivered subpoenas to the sheriff for that purpose. The sheriff then had conversations with the two subpoenaed individuals, but did not serve the subpoenas. He and the State's Attorney also threatened the witnesses and indicated that they should get out of town until after the trial.

In United States v. Ragen, 86 F Supp 382, ND Ill (1949), also cited by the defendant, a negro allegedly had raped a white woman. A doctor, who had examined the supposed victim, positively concluded from his examination that the victim had not been raped. The doctor

further stated that he knew the supposed victim and believed her to be mentally irresponsible. His report was submitted to the police, and the prosecuting attorney was aware of it. The prosecuting attorney did not call the doctor as a witness. The defendant in the case could neither read nor write and had been in no prior difficulty with the police. The prosecuting attorney warned the defendant of prompt action by the Klan if he took the stand; stated that he was a member of the Klan and threatened reprisal if the defendant posted bond. Defendant's attorney was apparently likewise threatened and refused to bring in twelve persons who were able to testify that the defendant was far from the scene of the alleged crime. The Thompson and Ragen cases are not persuasive authority for the argument of defendant that the failure of the State to call the informant as a witness or to identify him at the hearing, was a denial of due process.

■■■ The defendant further argues that he was denied due process in that the State amended its petition to revoke the probation at the beginning of the hearing, and that he was thus denied notice and an opportunity to prepare his defense. While we do not condone the action of the State in being dilatory in presenting its amendment to the petition, we note that the amendment only changed the name of the dangerous drugs purportedly purchased on February 9 and 10. Such amendment conformed the allegations of the petition to the testimony of the State's witnesses on the hearing to suppress the evidence which was held about a month earlier.

The amendment could not have taken the defendant by surprise. His only objection to the amendment was that if he had known of it earlier he would have obtained a transcript of the testimony of one of the State's witnesses. The court then asked counsel for the defendant how long he wanted for this purpose, and counsel suggested that they proceed with the hearing at that time

181

and that the transcript be made available later so that he could advise the court of any discrepancy in the testimony as to the drugs purchased. Thus, the court was willing to give defendant any additional time necessary to prepare his defense, but counsel finally concluded that he didn't need it.

██ ██ The defendant contends that the manner of conducting the cross-examination of the defendant and the admission of certain evidence was error, and a denial of due process. We have examined the entire record, which included the proceedings at the original trial and in connection with the petition to revoke probation. We find that there was compelling and substantial evidence to warrant the action of the trial judge in revoking the probation; and that the proceedings were not conducted in such a manner as to indicate a lack of concern for defendant or to violate any of defendant's basic rights, including due process.

██ The defendant also charges that his representation by counsel was so inadequate as to be a denial of due process. It is undisputed that the conduct of counsel in a criminal case may be such as to deny the defendant the fair trial contemplated by the due process clauses of both the State and Federal Constitutions. The People v. De Simone, 9 Ill2d 522, 524, 138 NE2d 556 (1956). However, our courts have repeatedly held that where the defendant is represented by counsel of his own choice, the judgment of conviction will not be reversed merely because his counsel failed to exercise the greatest of skill or for the reason that it might appear in looking back over the trial that he made some tactical blunder. In order to vitiate the trial, the whole of the representation must be of such low caliber as to amount to no representation and reduce the trial to a farce. The People v. Stephens, 6 Ill2d 257, 259, 260, 128 NE2d 731 (1955); The People v. Morris, 3 Ill2d 437, 443, 448, 121 NE2d 810 (1954). Defendant here was represented

by counsel of his own choice and the record indicated that counsel creditably conducted the defense against insurmountable factual odds.

The defendant also argues that the imposition by the court of an imprisonment term of from not less than one year and six months to not more than two years, upon the revocation of the probation, was excessive. The sentence was within the maximum penalty for the offense of which the defendant had been convicted. (Ill Rev Stats 1963, c 38, § 117–3(d); and c 111½, par 441.) We recognize that this court may reduce the punishment imposed by the trial court if the circumstances warrant such reduction. Ill Rev Stats 1965, c 38, § 121–9(b)(4).

The power to reduce a sentence is one that is to be exercised with caution. The imposition of sentence is peculiarly within the discretion of the trial court. This discretion should not be interfered with unless clearly abused. People v. Stevens, 68 Ill App2d 265, 273, 215 NE2d 147 (2nd Dist 1966); People v. Burks, 68 Ill App 2d 275, 215 NE2d 144 (2nd Dist 1966); People v. Brown, 60 Ill App2d 447, 450, 208 NE2d 629 (1st Dist 1965); People v. Hobbs, 56 Ill App2d 93, 98, 99, 205 NE2d 503 (1st Dist 1965).

Prior to imposing sentence, the trial court stated, among other things, that it appeared from the evidence that the defendant had made a mockery of its probation order; and that the defendant's testimony at the revocation hearing was fantastic and beyond belief. Under the circumstances of this case, we find no abuse of discretion in imposing sentence, and, accordingly, the judgment must be affirmed.

Judgment affirmed.

MORAN, P. J. and ABRAHAMSON, J., concur.