**People of the State of Illinois, Plaintiff-Appellee, v. John Buell, Jr., Defendant-Appellant.**

Gen. No. 69–99.

Second District.

March 19, 1970.

John T. Beynon, Public Defender, of Rockford, for appellant.

Philip G. Reinhard, State's Attorney of Winnebago County, of Rockford, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

The defendant, John Buell, Jr., pled guilty to the charge of arson, which is punishable in the penitentiary for an indeterminate term, with a minimum of not less than one year. Following a presentence psychiatric examination, which was requested by the defendant, and a hearing in aggravation and mitigation, the trial court sentenced the defendant to imprisonment in the state

penitentiary for a term of not less than sixty, nor more than seventy-five years. On appeal, the defendant contends that the sentence is excessive.

At the hearing in aggravation and mitigation, one psychiatrist and the defendant testified. The reports of two psychiatrists and the defendant's statement, which was made before the State's Attorney, were introduced in evidence. The reports of the psychiatrists were lengthy and complete. They revealed that extensive investigations had been made with reference to the defendant and his behavior. These reports and the testimony indicated that the defendant was not psychotic, was capable of understanding the charges against him and of cooperating with his counsel.

They revealed, among other things, that the defendant, who was 24 years of age at the time of the trial, had set fires in 1958, at the age of 12, and was then committed to St. Charles for two years; that after being released from St. Charles in 1961, he was picked up on several occasions for parole violations; that he was sent to Vandalia in February of 1963, was transferred from there to Pontiac, and was released in June of 1963; that in the summer of 1966, he spent 90 days in jail for disorderly conduct and in November of that year he was charged with aggravated battery on the ground of having hit a babysitter over the head with a hammer; and that in January of 1967, he was sentenced to Joliet for burglary and was paroled in November of the same year.

In his statement, the defendant admitted setting fires to the following property located in Rockford, Illinois: an automobile in May of 1968; a commercial and apartment building, which he knew to be occupied, in December of 1968; a hotel, a couple of weeks later; a particular house on Jefferson Street on at least two occasions, dates not specified; an employment agency

building on an unknown date in March of 1969; Memorial Hall, three separate fires on March 17, 1969; an apartment building, a commercial office building and the Court Street Methodist Church on March 18, 1969. The burning of the Church was the offense which gave rise to the charge of arson against the defendant. The Church was virtually gutted and at least one of the other buildings was totally destroyed. The total damage resulting from these fires was estimated to be in excess of $1,800,-000.

The psychiatrists' reports indicate that the defendant began having trouble in first grade, when he exhibited hostility toward other children and would not follow directions. Ultimately, he was placed in a special school because of his behavior and remained there until he reached the fifth grade, at which time he was sent to St. Charles for setting fires. He confessed to window peeping over a long period of time and to other problems relating to sexual deviation. The act of setting fires gave the defendant some form of sexual excitement and was directly associated with his sexual impulsivity.

One psychiatric report included excerpts from other psychiatric reports on the defendant in 1958 and 1966. In 1958, the psychiatrists reported that the defendant "is not psychotic but with lack of control mechanism; he is dangerous and capable of destroying not only through fire but with a gun." The 1966 psychiatric report concluded that the defendant's "predisposition to be unable to control his urges, marginal education, long standing threat to small children, his explosiveness, and apparent smothering hostility will necessitate long treatment period . . . ." This report concluded with the ominous note that the "potential to develop more severe antisocial and violent behavior in the future is very real."

The second report recommended that, for the protection of society, the defendant should be confined until he is able to understand himself more clearly; and that until such time, he posed a definite threat to other individuals and property. This psychiatrist felt that prognosis regarding recovery was poor.

■ This court is given the power to reduce a sentence by virtue of Supreme Court Rule 615(b)(4). (Ill Rev Stats 1967, c 110A, par 615(b)(4)). Supreme Court Rule 615 is a restatement of former section 121-9 of the Code of Criminal Procedure of 1963 (Ill Rev Stats 1963, c 38, par 121-9(b)(4)), without change of substance. Consequently, we are to be guided by the pronouncements made under the rule and the earlier statute, as well.

"The consequences of a sentence are of the highest order. If too short or of the wrong type, it can deprive the law of its effectiveness and result in the premature release of a dangerous criminal. If too severe or improperly conceived, it can reinforce the criminal tendencies of the defendant and lead to a new offense by one who otherwise might not have offended so seriously again." Standards Relating to Sentencing Alternatives and Procedures, p 1, American Bar Association "Approved Draft, 1968."

■■ In imposing a sentence, the trial court has an obligation to the public as well as to the person found guilty of a crime. In addition, the sentence is significant to the institutional officials in their program of rehabilitation in connection with the incarceration of the convicted person. Thus, in sentencing, the court must consider the punishment warranted under the circumstances of the particular case, the protection of the public, and the potential for rehabilitation of the party being sentenced. The circumstances of the case include the nature of the offense, the attending circumstances, the

371

character and propensities of the offender, his family, work record, past delinquencies, his potential for rehabilitation, and all other pertinent matters.

 When a sentence is imposed within the limits prescribed by statute, an appellate court will not disturb that sentence unless it clearly appears that the penalty imposed constitutes a great departure from the fundamental law and its spirit and purpose, or that it is manifestly in excess of the proscription of Section 11 of Article II of the Illinois Constitution requiring that all penalties be proportioned to the nature of the offense. The People v. Taylor, 33 Ill2d 417, 424, 211 NE2d 673 (1965); The People v. Smith, 14 Ill2d 95, 97, 150 NE2d 815 (1958); People v. Juve, 106 Ill App2d 421, 428, 245 NE2d 293 (1969). Also see: People v. Scott, 117 Ill App 2d 344, 253 NE2d 553 (1970). The imposition of sentence is peculiarly within the discretion of the trial court. People v. Nordstrom, 73 Ill App2d 168, 183, 219 NE2d 151 (1966).

At the hearing in aggravation and mitigation, the trial court had before it a rather complete resumé and history of the defendant. The court obviously was impressed by the concern expressed by the psychiatrists; the warnings contained in earlier reports of the propensity of the defendant to destroy, which warnings came to fruition; and the rather pessimistic prognosis. Presumably, the court was also impressed by the extensive losses suffered by the public as a result of the defendant's acts.

The penalty imposed is severe. We must note, however, that even where the minimum term of the sentence imposed is 60 years, the defendant, nevertheless, will be eligible for parole within 20 years, less time credit for good behavior. (Ill Rev Stats 1967, c 38, par 123–2 (a) (3).) Under the statute, even though the minimum sentence imposed is for a term greater than 20 years, the possibility of parole exists within 11 years and 3

months. Under the circumstances of this case, we view the severe sentence imposed by the trial court as an expression to the parole authorities that the retention of the defendant for a long period of time appears to be necessary for the protection of society and property; and that the defendant should not be granted parole unless all psychiatric reports indicate that he has been rehabilitated to the extent that he no longer would be a threat to the public.

■ The power in reviewing courts to reduce sentences should be exercised with considerable caution. The People v. Taylor, supra, 424. Sentences that have been imposed in other arson cases, which involve different circumstances and other defendants who may possess a greater rehabilitation potential, can be no more than a faint guide to the possible sentence to be imposed herein. The particular circumstances of a given case are the salient factors for the court to consider in imposing sentence. Under the circumstances of this case, we find no evidence which would warrant us to reduce the sentence imposed by the trial court. Accordingly, the judgment is affirmed.

Judgment affirmed.

ABRAHAMSON and SEIDENFELD, JJ., concur.