The People of the State of Illinois, Plaintiff-Appellee, *v.* James Poff *et al.*, Defendants-Appellants.

(No. 70-75; )

Third District—March 17, 1971.

Theodore A. Gottfried, of Defender Project, of Ottawa, for appellants.

L. E. Ellison, State's Attorney, of Sterling, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is a joint appeal from the Circuit Court of Whiteside County. James Poff and Eddie Warren were by indictment charged with having committed the crime of armed robbery. Upon arraignment pleas of guilty were tendered by the defendants and accepted by the court. Subsequently the defendants were sentenced to from five to twenty years in the penitentiary on their respective convictions.

Several grounds for reversal of the convictions were raised and urged by the defendants in their appeal brief; however, upon argument all issues presented for review with one exception were withdrawn and waived.

The sole issue remaining to be decided is whether the sentences given the defendants were excessive and should be reduced.

The defendants were represented by counsel and tendered their pleas of guilty to the charge of armed robbery. After being admonished by the court the pleas were accepted and judgment entered thereon. The defendants then indicated that they did not intend to request probation but did desire a hearing in mitigation and aggravation of sentencing. It was from the testimony adduced in this hearing that we are able to reconstruct the factual situation that resulted in the conviction and sentencing of the defendants.

The defendants Warren and Poff, ages 19 and 18 respectively, devoted almost the entire afternoon of February 12, 1970, to the drinking of vodka, 7-Up and beer.. According to their testimony, the defendants spent the afternoon driving around in a car belonging to the mother of the defendant Warren. They made one stop to play five or six games of pool, after which they continued their driving and during which they resumed their consumption of alcoholic beverages. They stated that between 7:00 P.M. and 8:00 P.M. they conceived the idea of robbing a service station known as "Dale's West End Checker" in Sterling, Illinois. In preparation for the robbery they went to the Poff home for the purpose of obtaining stockings or some other items that would serve to hide their identity. Acquiring a stocking, a towel, two hats and a jacket, they then proceeded to the service station arriving there between 9:30 o'clock P.M. and 9:50 o'clock P.M. Entering the station the defendants encountered the attendant, Michael Miller, whom they threatened with a 22 caliber pistol. They then frisked Miller and pushed him into an adjoining room. Miller informed the defendants he did not have the keys to the cash register so the defendants then took his wallet, money changer and loose change which he had in his pocket. The total proceeds from the robbery being in the sum of $83.00. The defendant Warren, while moving around in the station, either accidentally or intentionally fired one shot from the gun. Miller states the gun was not aimed at him when it was discharged. From the evidence it is apparent that the defendant Warren was next going to shoot the lock off a drawer containing "stamp books" when he was persuaded not to do so by defendant Poff.

Unknown to the defendants a neighbor in the vincinity of the service station had seen them don their disguises prior to their entry into the station and had notified the Sheriff's office. The defendants were just leaving the station as the squad car arrived upon the scene of the crime. Both of the defendants attempted to escape by fleeing on foot but both were apprehended after a chase of several blocks. The defendant Warren offered some resistance before he submitted to arrest.

The hearing in mitigation and aggravation of sentencing disclosed that the defendant Warren had previously been convicted and fined for speeding, illegal transportation of alcoholic liquor, illegal consumption of alcohol as a minor, unlawful possession of liquor and disorderly conduct. In addition he had been sentenced to serve 30 days in jail for illegal possession of firearms and on another occasion had been sentenced to 100 days in the Illinois State Penal Farm at Vandalia on charge of escaping from jail.

The defendant Poff had previously been fined twice for disorderly conduct. When he committed the crime which is the subject of this appeal he was at liberty on his own recognizance bond pending disposition of his application for probation as the result of his having entered a plea of guilty to the crime of forgery.

Both defendants lived in the home of their parents. Defendant Warren had a ninth grade education and at one time held a job for approximately two and a half years. The defendant Poff was a high school graduate but had a very spotty work record.

There is no question but what this court is given the power to reduce a sentence. Such authority is specifically granted in Supreme Court Rule 615(b) (4), Ill. Rev. Stat. ch. 110A, par. 615(b) (4). Consequently in exercising or refusing to exercise this power we must look to the pronouncements made under this rule.

In *People v. Taylor, 33 Ill.2d 417, 211 N.E.2d 673,* our Supreme Court stated:

"Reviewing court's authority to reduce sentences imposed by trial courts where circumstances warrant should be applied with considerable caution and circumspection, since trial judge ordinarily has superior opportunity in course of trial and hearing in aggravation and mitigation to make sound determination concerning punishment to be imposed than do appellate tribunals."

■■ So while we are specifically granted authority to reduce sentences imposed by trial courts, we must exercise such power with caution and circumspection.

We have set forth in detail the acts of the defendants both prior to and during the commission of the crime as well as their past records in regard to violation of the law. In addition we have set forth their educational backgrounds and work records. Such detailed information is necessary since it is incumbent upon the reviewing court to consider certain accepted guidelines when approaching the question as to whether or not we should reduce a trial court's sentence.

Seeking guidelines to assist us in the determination of the issue presented in this appeal, we encounter the very clear, concise and compre-

hensive recommendations set forth in *People v. Buell, 120 Ill.App.2d 367, 256 N.E.2d 845,* where the court stated:

"In imposing a sentence, the trial court has an obligation to the public as well as to the person found guilty of a crime. In addition, the sentence is significant to the institutional officials in their program of rehabilitation in connection with the incarceration of the convicted person. Thus, in sentencing, the court must consider the punishment warranted under the circumstances of the particular case, the protection of the public, and the potential for rehabilitation of the party being sentenced. The circumstances of the case include the nature of the offense, the attending circumstances, the character and propensities of the offender, his family, work record, past delinquencies, his potential for rehabilitation, and all other pertinent matters."

We are also mindful that:

"The consequences of a sentence are of the highest order. If too short or of the wrong type, it can deprive the law of its effectiveness and result in the premature release of a dangerous criminal. If too severe or improperly conceived, it can reinforce the criminal tendencies of the defendant and lead to a new offense by one who otherwise might not have offended so seriously again." *Standards Relating to Sentencing Alternatives and Procedures, p. 1, American Bar Association, Approved Draft, 1968."*

The American Bar Association Project on Minimum Standards for Criminal Justice urges the so-called three to one ratio sentence which in effect would provide that the maximum sentence imposed should be at least three times the minimum sentence imposed so that the prison authorities and parole authorities shall have a greater opportunity to assist in a prisoner's rehabilitiation.

Accepting the foregoing guidelines and recommendations we must determine their effect upon the case before us.

While the defendants are quite young, they were nevertheless convicted of a crime which could have resulted in a great harm to an innocent victim. They planned their crime, they attempted to hide their identity and were armed with a deadly weapon, a weapon which in fact was discharged during the commission of the robbery. The defendants during the hearing in mitigation and aggravation stressed the fact that they had been drinking heavily for some time prior to the robbery. However, their conduct in preparing for the crime belies a state of extreme intoxication which would tend to excuse them for their actions.

The defendant Warren has a history of the unlawful use of alcohol and had previously been incarcerated in jail for the illegal possession of a fire-

854

arm. On two different occasions the defendant Warren had been incarcerated for a total of 130 days and we can only conclude that such punishment did not have a rehabilitating effect.

The defendant Poff had a record of disorderly conduct and while petitioning the court for probation as a result of a conviction for the crime of forgery, he saw fit to participate in the commission of another felony.

The record is barren of any evidence that either of the defendants were responsible for the care or support of anyone other than themselves. The record definitely indicates that the defendants were not accepting the duties and responsibilities required of good citizenship.

After following the accepted guidelines in such cases we can only conclude that the nature of the offense, the attending circumstances, the character of the defendants and their propensities for violating the law, their work record, and past delinquencies do not warrant us in reducing the sentences of the trial court.

██ The seriousness of the offense of armed robbery was recognized by the legislature when the penalty for committing such a crime was fixed at a minimum of two years and a maximum at any number of years. The penalties imposed in this case by the trial court were within the range of the ratio recommended by the American Bar Association Project on Minimum Standards for Criminal Justice. Under the circumstances of this case we find no evidence which would warrant us to reduce the sentences imposed by the trial court. Accordingly, judgment is affirmed.

Judgment affirmed.

ALLOY, P. J., and STOUDER, J., concur.