THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN PATRICK, Defendant-Appellant.

Second District (2nd Division)    No. 75-254

Opinion filed November 15, 1976.

Frank Wesolowski, Jr., Public Defender, of Wheaton (Robert H. Heise, Assistant Public Defender, of counsel), for appellant.

John J. Bowman, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Defendant and two companions were charged with five counts of armed robbery. Defendant was convicted on three of the five counts, and sentenced to a term of 15 to 30 years on each count, the sentences to run concurrently. He claims that the jury verdict was against the manifest weight of the evidence, that the trial court improperly denied a new trial on newly discovered evidence, that the sentence was excessive, and that he was improperly convicted of three counts which arose out of the same conduct.

On October 2, 1974, defendant's brother drove the defendant and a third person, Fred Butler, from Chicago to Glen Ellyn where one of the complaining witnesses, Dale Walksler, resided. Not knowing Walksler's precise address, the defendant's brother stopped his car in the neighborhood to inquire about the location of Walksler's home. He chanced to inquire of the complainant's next door neighbor and she pointed out the Walksler home.

There is marked conflict in the accounts of events which subsequently transpired. The version presented by the State and believed, at least in part, by the jury, is as follows. One of defendant's companions went to the door of the Walksler home (complainant also runs a motorcycle repair shop at that location), and inquired briefly about motorcycle repairs. He then turned and produced a gun, and ordered Walksler into the house. As Walksler complied, he was followed by the defendant and his two companions, including defendant herein. Walksler was pushed into the living room where a friend, Robert Koslow, was sitting on the couch; both were told to lie on the floor. While prone, Walksler was asked for his money, and he heard the intruders ask Koslow something about a watch.

There was subsequently a knock on the door and John Bauer (a friend of complainant's father who was to replace a motor on the furnace in the Walksler home) arrived with his assistant, Billy Whitley. Bauer and Whitley were ordered to the living room floor after first removing their clothing. The three from Chicago searched the clothing for money. Whitley was relieved of a Timex watch with a Spiedel band. As the three

intruders prepared to leave, there was another knock on the door, and Gary Dunn, a friend of Walksler, was ordered to enter. He, also, was relieved of his money and told to lie on the floor. The intruders bound the five men using wire pulled from the telephone, an antenna, and appliances, and left them lying on the floor.

It was established that, during these happenings, each of the three intruders carried a gun. (Witnesses consistently identified defendant's gun as a small, shiny revolver.) The three left the scene in the auto owned by defendant's brother but, about one-half mile from the Walksler home, their car broke down. They hailed down a van to take them to a garage to arrange for repairs. Meanwhile, the victims had managed to free themselves, and Walksler used his neighbor's phone to report the incident to the police. Officers quickly spotted the abandoned vehicle and the returning van (which an observer had described to them); defendant and his two companions were passengers in the van.

In the abandoned auto, police found the two guns taken from Walksler's home. In the van were a bag containing a large amount of cannabis, and three additional guns which fit the description the victims had given of the guns used in the robbery. Included was a small nickel-plated hand gun, found in a jacket identified as belonging to the defendant. At the police station, the three subjects were placed in an empty booking chute. The booking officer subsequently noticed a Timex watch with a Spiedel band on the floor of the chute. Since the watch had not been there earlier, the officer questioned each of the subjects as to its ownership; each denied knowledge thereof. Approximately $1500 in cash was found on the three subjects, including $485 which was found rolled up in defendant's underwear. At trial the witnesses testified that amounts totalling $1500 had been taken from them; Whitley identified the watch as the one taken from him at the Walksler home; and the two guns removed from the getaway car were identified as those taken from Walksler's house.

According to the defendant's version of the events of that afternoon, he and his companions had travelled to Glen Ellyn to buy drugs on the understanding that they could be purchased more cheaply there than in Chicago. By prearrangement, they arrived at Walksler's with approximately $2500 in cash to buy hashish. While defendant and Butler waited in the car, defendant's brother was admitted to the Walksler home. He asked if the drugs were ready; Walksler replied affirmatively, and left the room to get the drugs. During this time complainant's friend Koslow was seated on the couch reading a book. As Walksler returned to the room with a bag containing the drugs, Butler, who was worried that the buy was taking too long, entered the home and offered to hold the drugs while defendant's brother counted the money. As the money was

being counted, Butler checked the contents of the bag and determined that the drugs therein did not constitute all that had been bargained for. He so informed his companion. Walksler explained that the reduction in the amount of drugs was due to the fact that the cost had gone up from $110 per ounce to $175 per ounce, but, indicating that he wanted no trouble, he said he would get the balance of the drugs. As Walksler left the room, Butler and defendant's brother noticed Koslow slip his hand down between the pillows of the couch as though groping for something, and they also noticed a shadow, cast upon the floor, of what appeared to be a gun barrel. Defendant's brother drew a gun, told Koslow to withdraw his hand from the pillows, removed a small, shiny revolver from beneath the couch pillows, and disarmed Walksler of a rifle. Defendant asserts that his brother and Butler, feeling that they had paid an adequate price for the drugs purchased, were trying to leave the premises when Bauer and Whitley arrived. Defendant, who until this time had waited in the car, followed Whitley and Bauer inside. Because it was difficult for the three to exit safely, they tied Walksler, Koslow, Bauer, and Whitley, and had to tie Dunn who arrived during this time.

Defendant claims that the approximately $1500 found in his possession and the possession of his companions, was part of the money they had brought with them, intending to purchase a greater quantity of drugs than Walksler provided. He contends that the evidence does not support a finding that money was taken from anyone, and claims that Walksler and his four acquaintances concocted the alleged robbery story after the drug buy went awry. Basing his argument on this theory of the case and upon alleged inconsistencies in the details of the incident related by the five complainants, defendant asserts that the jury verdict is against the manifest weight of the evidence.

■■ ■ There are multiple contradictions between the prosecution's and defendant's versions of the events of October 2, but it is the function of the jury to weight the evidence presented and to evaluate the credibility of the witnesses. It should be noted that the jury was apparently not satisfied with the evidence presented to show that Walksler and Koslow were the victims of armed robbery, as the defendant was not found guilty on the two counts naming these witnesses. A reviewing court will not disturb a jury verdict unless that verdict is against the manifest weight of the evidence. We have reviewed the entire record herein and note minor inconsistencies between the testimony of the five complainants (with regard to what kind of wire was used to tie them, and who helped whom get free). We also note that the events transpired within a brief period of time and involved eight people in a rather confined space. In such circumstances some minor inconsistencies might be expected. We feel that the jury could well have considered the

evidence in light of these factors and have found the defendant guilty on the evidence presented.

Six weeks after the trial defendant moved for a new trial on the basis of newly discovered evidence. A new trial on this basis is properly awarded when the movant shows (1) that the evidence discovered is not merely cumulative, but will probably change the verdict on retrial, and (2) that there has been no lack of diligence. (*People v. Reese* (1973), 54 Ill. 2d 51, 59.) Applications for new trials on the basis of newly discovered evidence are looked upon with disfavor and are subject to close scrutiny by the trial court, in whose sound discretion this question is left. *People v. Holtzman* (1954), 1 Ill. 2d 562, 569.

Briefly, the newly discovered evidence propounded by the defendant is as follows. The defense located a woman who was alleged to have set up the drug deal between Walksler and defendant; Walksler's neighbor would testify that he had purchased marijuana from Walksler; and a person by the name of David Hull would testify he purchased cocaine from John Bauer. As the first two items of new evidence merely attack the credibility of Walksler as a witness, and since the counts against Walksler and Koslow were found not proved, we cannot see that the submission of that evidence could alter the outcome of the trial. The third item of evidence arguably indicates that Bauer and perhaps other participants were involved in the alleged drug sale and provides motivation for Bauer to have perjured his testimony. The prosecution informed the court, however, that during the trial of defendant's brother and Butler, the same David Hull was incarcerated in the same county jail in the very tier where defendant's brother was incarcerated. Moreover, at that trial a person by the name of Peter Dakuris stated he knew a John Bauer who dealt in cocaine in the area of West Chicago but the description given did not fit that of complainant Bauer at this trial.

■■ Under these circumstances and measured against the aforestated standards, we can find no abuse in the trial court's refusal to grant a new trial.

■■ The sentence imposed in this case is asserted to be excessive. Defendant cites *People v. Buell* (1970), 120 Ill. App. 2d 367, 371-72, wherein this court observed that a court must "consider the punishment warranted under the circumstances of the particular case, the protection of the public, and the potential for rehabilitation of the party being sentenced. The circumstances of the case include the nature of the offense, the attending circumstances, the character and propensities of the offender, his family, work record, past delinquencies, his potential for rehabilitation, and all other pertinent matters." The defendant chooses to emphasize the language "his potential for rehabilitation" and to ignore the language "past delinquencies" in application to his own case. Although

the presentencing report indicates that defendant has some modest experience in painting and welding, it also indicates that he has a long criminal record including six felony convictions, most for violent crimes within seven years prior to the incident here. Although as defendant points out, there may be precedent for lighter sentencing, we do not feel that the trial court abused its discretion in imposing the defendant's sentence.

■■ The State confesses error in that defendant's three convictions herein arose out of the same transaction and asserts, therefore, that only one conviction should be affirmed.

For the above reasons we affirm the judgment of the trial court as to the conviction and sentence on count II of the indictment and vacate the convictions and sentences on counts III and IV.

Affirmed in part and vacated in part.

RECHENMACHER and DIXON, JJ., concur.