**People of the State of Illinois, Plaintiff-Appellee, v. Ronald Cooke, Defendant-Appellant.**

Gen. No. 68–121.

Fifth District.

December 5, 1969.

Robert F. Godfrey, of East St. Louis, for appellant.

Robert H. Rice, State's Attorney of St. Clair County, of Belleville (Joseph B. McDonnell, Assistant State's Attorney, of counsel), for appellee.

PER CURIAM.
Defendant, after being tried and found guilty by a jury of the crime of murder, was sentenced to a term of not less than fourteen nor more than twenty years. On appeal from that conviction and sentence, this Court reduced the degree of the offense from murder to voluntary manslaughter, under the authority of Supreme Court Rule 615(b), and remanded the case to the Circuit Court with instructions "to enter a finding of guilty of voluntary manslaughter and to impose a sentence for that crime appropriate to the facts and circumstances of this cause and to whatever other matters in aggravation or mitigation may be made available to the trial court." See People v. Cooke, 93 Ill App2d 376, 236 NE2d 97.

Subsequently, defendant applied for probation and a hearing was held in aggravation and mitigation. It was stipulated that the evidence heard at the previous murder trial, as well as the testimony taken at the hearing in support of defendant's motion for probation, would be submitted to the trial judge for consideration in aggravation and mitigation of the offense.

The trial court denied probation and sentenced defendant, on his manslaughter conviction, to a term of not less than fourteen nor more than twenty years, observing as he did so that he had imposed the same penalty following the murder conviction and that it "could constitute a manslaughter sentence," and that he had imposed such a sentence initially because he had felt "there were a great many mitigating circumstances." Defendant appeals.

At the hearing on his application for probation, the defendant testified that he had been in the custody of either the Sheriff of St. Clair County or the prison authorities at Menard Penitentiary since July of 1966. At the time he went to Menard he was a high school graduate, but received another high school diploma at Menard in order to take college courses relating to mathematics and to political economy. He also received registration as a medical technologist, which represents a year's training and laboratory work in the general hospital at the penitentiary. This certificate would entitle him to work in any hospital as a laboratory assistant and that of the 2,000 inmates, only the defendant and one other inmate received the medical technologist registration certificate. Defendant also took a heavy equipment course in the operation of bulldozers and cranes for which he received a certificate. He also produced a letter guaranteeing him employment with the Clark Paint Company of St. Louis, Missouri, if he was granted probation.

Dr. Groves Smith, Consulting Psychiatrist to the Menard Penitentiary Department of Public Safety since 1943, testified that throughout the defendant's stay at Menard he had made a real effort to better himself. In a mathematics course from S. I. U., he received a B, and in a college extension course in political economy, he received a B. He also took a nurse's training course and a medical technologist training course.

Dr. Smith described defendant as a very intelligent person, capable of making a satisfactory adjustment to institutional life and that he is one of the very few people who came to the institution under what the witness felt were grave difficulties and did not become embittered. According to Dr. Smith, the defendant realized it was up to him to prove to the world and society that he had the ability to rise above the occasion of the incident that brought him there, and that he is a proper subject for probation. The doctor had a forty-five minute discussion with the defendant before he testified and stated that the results of that interview confirmed his original psychiatric evaluation of the defendant. The doctor also testified that the defendant had made outstanding adjustments in institutional work and his prognosis for the future is excellent.

The record also contains a letter from John J. Twomey, Supervising Sociologist of the Division of Criminology of the Department of Public Safety, addressed to the defendant's attorney, which reads as follows:

"Rev. Robert Foppe has referred to our office your request for information regarding the above-named.

"Subject was seen for psychiatric evaluation on only one occasion and this was a routine contact resulting from the violent nature of the committing offense. Our Staff Psychiatrist's report dated October 25, 1966, contains the impression that subject is without need for mental treatment and not mentally retarded. Psychometric testing by our psychological staff discloses Very Superior Intelligence.

"As you no doubt know, his primary assignment during his incarceration has been as a nurse in the prison hospital and from all indications he has performed at a high level of efficiency. In-

sight into his difficulties has always been very good and from our knowledge of him, there are no contraindications to a satisfactory community adjustment. Throughout his incarceration he has been regarded as an improvable offender for whom the prognosis is favorable.

"We trust this provides an appropriate response to your inquiry."

 There is no question but that under the powers granted to the reviewing court pursuant to Rule 615(b), we have authority to reduce the sentence in a proper case. People v. Sanders, 75 Ill App2d 422, 220 NE2d 487; People v. Novack, 83 Ill App2d 391, 221 NE2d 780. Sentence should be reduced, however, only upon a showing of substantial reasons for so doing and it should not be changed because a reviewing court would have imposed a different penalty or for mere judicial clemency. People v. Stevens, 68 Ill App2d 265, 215 NE 2d 147; People v. Johnson, 68 Ill App2d 275, 215 NE2d 144; People v. Harpole, 97 Ill App2d 28, 239 NE2d 471.

In People v. Cooke, supra, we held that the evidence at defendant's trial disclosed that defendant at the time of the killing was acting under a sudden and intense passion resulting from serious provocation. Thus, the crime of which he was convicted was not premeditated. He had no criminal record and all of the signals point to the probability that he will live a good, productive life when discharged from prison. He holds no malice toward society or toward any individual as a result of his conviction.

██ The purpose of modern-day penology is the rehabilitation of the offender. That sentence which has the greatest potential of restoring the offender to a useful and productive place in society, while at the same

time adequately punishing the offender for his misconduct and safeguarding the public from further offenses, is the one which should be imposed. See People v. Carroll, 76 Ill App2d 9, 221 NE2d 528; People v. Brown, 60 Ill App2d 447, 208 NE2d 629; People v. Harpole, supra.

■ We feel that the circumstances portrayed by this record warrant the exercise by this court of the power to reduce the punishment imposed by the trial court. Accordingly, the trial court's sentence of fourteen to twenty years in the penitentiary is reduced to three to six years in the penitentiary.

Judgment modified, and affirmed as modified.