**People of the State of Illinois, Plaintiff-Appellee,
v. David Buford, Defendant-Appellant.**

**Gen. No. 69–137.**

Second District.

July 29, 1970.

John T. Beynon, Public Defender of Winnebago County, of Rockford, and John F. McNamara, Assistant Public Defender, for appellant.

Philip G. Reinhard, State's Attorney of Winnebago County, of Rockford, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

This case presents the narrow issue of whether the trial court erred in imposing upon the defendant a sentence of not less than two nor more than seven years in the penitentiary.

The defendant was arrested on May 29, 1968, and was charged with the offense of having cashed a forged check in the sum of $50 on December 1, 1967. After an indigency hearing, the Public Defender was appointed on June 11, 1968, to represent him. The next day the defendant waived a preliminary hearing, and he was indicted by the Winnebago County Grand Jury on October 17, 1968.

Upon arraignment, he entered a plea of not guilty, but subsequently, on November 19, 1968, changed his plea to guilty, waived jury trial, and was granted leave to file a petition for probation. The defendant does not question the propriety of the court's admonitions in connection with the waiver of jury trial or the entry of a plea of guilty. The sole issue before us is the propriety of the sentence. The defendant contends that it was too severe and should be reduced.

One of the purposes of the Criminal Code is to "Prescribe penalties which are proportionate to the seriousness of offenses and which permit recognition of differences in rehabilitation possibilities among individual offenders." (Ill Rev Stats 1969, c 38, par 1–2(c).) This purpose affords the court a range of discretion in sentencing which permits a recognition of the rehabilitative possibilities of the individual offender. The law does not necessarily contemplate that the same penalty will be inflicted upon all persons who are guilty of the same offense.

In considering this subject, we stated in People v. Buell, 120 Ill App2d 367, 256 NE2d 845 (1970), at pages 371, 372:

> "In imposing a sentence, the trial court has an obligation to the public as well as to the person found guilty of the crime. . . . Thus, in sentencing, the court must consider the punishment warranted under the circumstances of the particular case, the protection of the public, and the potential for rehabilitation of the party being sentenced. The circumstances of the case include the nature of the offense, the attending circumstances, the character and propensities of the offender, his family, work record, past delinquencies, his potential for rehabilitation, and all other pertinent matters."

At the hearing on the petition for probation, the defendant, a Catholic priest, and a Protestant minister, testified on behalf of the defendant. The priest had known him for four and one-half years, and had helped him financially, as well as spiritually. He knew that the defendant was a drug addict, and that he had turned himself in for traffic in drugs. The defendant had told him of his efforts to quit the use of drugs, his failures, and his aspirations.

426

The Protestant minister, Chaplain of the Council on Law Enforcement, related that he became acquainted with the defendant at a recent date when the local press carried a series of articles on drugs; that the defendant came to the church and talked with him about drugs and about his drug problem; that the defendant, as a former drug addict, made suggestions to him relative to combating the drug problem in this community. He believed that the defendant had leadership possibilities in connection with the operation of a Halfway House, or a similar facility, which could be dedicated to aiding former addicts.

The defendant, thirty-eight years of age, was employed at the time of the probation hearing. He was a high school graduate, and had been in the armed service of the United States on three occasions. He first enlisted when under the age requirement, and was discharged about a year later when his true age was discovered. Later he reenlisted, and was in the service in Korea from 1949 to 1952. He again enlisted in 1954, but was discharged when it was discovered that he had failed to notify the armed services that he was on probation at the time of enlistment. At the time of his last enlistment, he was on probation for forgery.

The defendant admitted that he had three felony convictions: one for forgery, one for possession, and one for the sale of narcotics. He stated that he had used drugs, and that he became an addict after being hospitalized for a service incurred wound. While hospitalized, he received morphine and later switched to other drugs. He served a Federal sentence at Leavenworth prison and used no drugs while there. Upon leaving Leavenworth, he voluntarily went to the Federal hospital at Lexington, Kentucky, for treatment. He later reverted to the use of drugs and voluntarily went to Covington, Tennessee, for treatment.

The defendant had taken courses in literature above the high school level, and started writing while in Leavenworth prison during the years of 1958 to 1963. His works were published under the name of D. Thomas Bond.

The probation report—the verity of which was acknowledged by the defendant—reflected the following:

"FAMILY STATUS: The defendant states he was born in Shelby County, Tennessee, June 30, 1930. His parents are separated, and his father, Estes Buford, lives at 2044 – 21st Lane, Milwaukee, Wis. His mother, Viola Hill, resides at 530 Symington, Covington, Tenn. He has four sisters and five brothers, and he states that one of his brothers, Estes Buford, resides with the defendant. He completed his high school education in 1963 while confined to Leavenworth Penitentiary. He states he was married at Milwaukee, Wis. March 13, 1953, and that one child was born of this marriage. His wife presently resides in Milwaukee, Wis. pending the outcome of this probation hearing.

"Defendant states he enlisted in the U. S. Army Jan. 27, 1946 and was honorably discharged Jan. 13, 1947; that he enlisted in the U. S. Army April 7, 1948 and was honorably discharged July 6, 1952; that he enlisted in the U. S. Army March 15, 1954 and that on June 2, 1954 he received an undesirable discharge for failure to make known at the time of his enlistment that he was on probation on a felony conviction from Milwaukee, Wis. for forgery.

"EMPLOYMENT: He states he has been employed as a laborer in construction work in Rockford, Illinois by John Fridh and Linden & Son.

"FORMER TROUBLE: The defendant states he has been arrested on at least four previous oc-

casions, as follows: 1) in 1953 at Milwaukee, Wis. for forgery, placed on two years probation from which he was discharged in 1955; 2) In April, 1953, at Milwaukee, Wis. for possession of narcotics, sent to the narcotics hospital at Lexington, Ky. for two years; 3) In 1957 at Milwaukee, Wis. for the sale of narcotics and sentenced to 10 years at Leavenworth Penitentiary in 1958. Following his release from Leavenworth in 1963 he was transferred to the narcotics hospital at Lexington, Ky., being discharged in 1964; 4) in Feb. 1967 at Rockford, Illinois for narcotics violation. However, the informant later admitted that he had falsified his testimony, and the defendant was released shortly thereafter.

"PRESENT TROUBLE: The defendant is charged with and admits the cashing of a forged check in the city of Rockford, Illinois on December 3, 1967 in the amount of $50.00. He also admits to your Probation Officer that there were approximately eight other checks totaling approximately $600.00 which were involved in the same episode. In May, 1968 the defendant returned to Rockford, Illinois from Milwaukee, Wisconsin where he had gone following the cashing of these checks, whereupon he was arrested while driving a car without a proper license. He states he was arrested May 29, 1968, released on bond July 7, 1968 and has since remained at liberty. His petition for release on probation was filed November 18, 1968."

The defendant's character, propensities, family background, work record, past delinquencies, and the nature of his present offense, were not indicative of a good rehabilitation potential. Thus, the evidence would support the view of the trial judge: that the defendant was not a good probationary risk.

Section 117–1 of the Code of Criminal Procedure, provides:

"(a) A person who has been found guilty of any offense except a capital offense, the sale of narcotics or rape may be admitted to probation when it appears that:

"(1) The defendant is not likely to commit another offense;

"(2) The public interest does not require that the defendant receive the penalty provided for the offense; and

"(3) The rehabilitation of the defendant does not require that he receive the penalty provided for the offense.

"(b) The term of probation may be for any period not less than 6 months and not to exceed 5 years. The court may for good cause extend the period of probation for not more than an additional 2 years.

"(c) A person admitted to probation shall remain subject to the jurisdiction of the court.

"(d) The judgment of guilty entered prior to the admission of defendant to probation shall be a final judgment subject to review under Article 121 of this Code."

(Ill Rev Stats 1969, c 38, par 117–1.)

The defendant's record does not inspire the hope that he is not likely to commit another offense. When he reverts to the use of narcotics, the desire for drugs drives him to repeated forgeries. Confinement appears to be necessary to protect the public from continued criminal activity by the defendant. It is fondly hoped that the narcotics habit may be broken while the defendant is incarcerated; and that he may receive cor-

rectional treatment which can be most effectively provided during confinement.

█ When a sentence is imposed within the limits prescribed by statute, an appellate court will not disturb that sentence unless it clearly appears that the penalty imposed constitutes a great departure from the fundamental law and its spirit and purpose, or that it is manifestly in excess of the proscription of section 11 of Article II of the Illinois Constitution requiring that all penalties be proportioned to the nature of the offense. People v. Taylor, 33 Ill2d 417, 424, 211 NE2d 673 (1965) ; People v. Smith, 14 Ill2d 95, 97, 150 NE2d 815 (1958) ; People v. Juve, 106 Ill App2d 421, 428, 245 NE2d 293 (1969). Also see: People v. Scott, 117 Ill App2d 344, 253 NE2d 553 (1969).

█ The imposition of sentence is peculiarly within the discretion of the trial court and this discretion should not be interfered with unless it is clearly abused. People v. Nordstrom, 73 Ill App2d 168, 183, 219 NE2d 151 (1966). We find no abuse of discretion by the trial court in this respect. The power in reviewing courts to reduce sentences should be exercised with considerable caution. People v. Taylor, supra, 424.

Under the circumstances of this case, the evidence does not warrant a reduction of the sentence imposed by the trial court. Accordingly, the judgment is affirmed.

Judgment affirmed.

ABRAHAMSON and SEIDENFELD, JJ., concur.