THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CARL KEITH O'DELL, Defendant-Appellant.

(No. 72-59;

Fifth District—October 18, 1972.

Richard O. Hart, of Benton, for appellant.

Ronald A. Niemann, State's Attorney, of Salem, for the People.

PER CURIAM:

In a jury trial in the circuit court of Marion County the defendant

204

herein was tried on three counts of murder and one count of voluntary manslaughter, all charges arising out of the fatal shooting of defendant's wife. The jury returned a verdict of not guilty on the three charges of murder and guilty on the charge of voluntary manslaughter. After a hearing in aggravation and mitigation, defendant was sentenced to a term of 14 to 20 years. The sole issue presented on this appeal is whether the sentence is excessive.

It appears from the record that defendant and his wife were married about 14 years. During this time, except for a two year interlude in civilian life, defendant was in the United States Air Force. He had several tours of duty overseas, during which times he left his family at home in Salem, Illinois. In his absence, defendant's wife apparently had several affairs with other men, one affair lasting for several years. This particular affair apparently became so serious that defendant's wife refused to move to Oklahoma where defendant was stationed because of her relationship with the other man. Defendant became extremely upset about this. Testimony revealed that shortly after 10:15 P.M. on May 21, 1971, defendant's wife left the Elks Club and got into her car. Witnesses said they saw a struggle inside the car and that several shots were fired. The witnesses then saw defendant's wife slump over in the front seat. The assailant got out of the car and threatened the witnesses with his gun. Defendant was found the next morning asleep in his car with the murder weapon lying on the front seat. When he was arrested it took several policemen to get him out of the car. Defendant was identified at the trial as the assailant who shot the deceased. Defendant claims to remember nothing of the shooting nor anything about his arrest. He remembers only waking up in the Marion County Jail.

■■ This court has held in the past that courts should prescribe penalties which are proportionate to the seriousness of the offense, which safeguard society from further offenses, and which serve to rehabilitate the offender into a useful member of society. (*People v. Moore,* (Ill.App.2d), 272 N.E.2d 270.) As a guideline in implementing this policy it has been held that in setting the maximum and minimum sentence the seriousness of the crime and the possibilities of rehabilitation should be considered. (*People v. Jordan,* (Ill.App.2d), 272 N.E.2d 429.) In this regard, it should be noted that ch. 38, sec. 9—2(c), Ill. Rev. Stat. authorizes a maximum sentence of 20 years for voluntary manslaughter. The trial judge, upon passing sentence on defendant said that this was the most aggravated case of voluntary manslaughter he had ever seen. In view of the seriousness of this crime, the remark by the trial judge, and the guideline set out above, we are constrained to affirm the maximum sentence of 20 years.

■■ In reviewing sentences in the past, this court has taken into consideration the defendant's prior record, if any, whether he was steadily employed as well as his conduct since his arrest and before trial. (*People v. Helms*, (Ill.App.2d), 272 N.E.2d 228; *People v. Cooke*, 117 Ill.App.2d 296, 254 N.E.2d 293.) Defendant herein had no prior criminal record, and, after having fulfilled his military obligation, re-enlisted in the Air Force where he served for eight years. He was recommended for promotion well ahead of his contemporaries. Several of his military superiors testified in his behalf and all indicated that up to the time of this incident defendant had had a distinguished military career. While awaiting trial in the county jail, defendant was made an indoor trusty, he served meals to other inmates, washed and waxed floors, and helped install one-way television sets and radios for the sheriff's cars. The sheriff testified at the hearing in aggravation and mitigation and said defendant was very cooperative and "exceptional." The probation report of defendant said that it was "highly unlikely" that defendant would commit another such crime. See *People v. McClendon*, 130 Ill.App.2d 852, 265 N.E.2d 207.

It thus appears that defendant should be a likely candidate for parole in the near future. However, excessive minimum sentences may defeat the effectiveness of the parole system by making mandatory the incarceration of a prisoner long after effective rehabilitation has been accomplished. (*People v. Lillie*, 79 Ill.App.2d 174, 223 N.E.2d 716.) In this regard it should be noted that the American Bar Association Sentencing Standards, sec. 3.2(c)(iii), provides:

> "In order to preserve the principles of indeterminacy, the Court should not be authorized to impose a minimum sentence which exceeds one-third of the maximum sentence actually imposed."

Likewise, sec. 5—8—1 of the new Illinois Unified Code of Corrections (S.H.A., ch. 38, sec. 1005—8—1), which becomes effective January 1, 1973, provides that sentences for class two (which includes voluntary manslaughter) and class three felonies shall not be greater than one-third of the maximum term. Although the Unified Code of Corrections is not yet in effect it is plainly indicative of the legislative attitude regarding the ABA Sentencing Standards.

In view of the foregoing, we therefore reduce the minimum sentence to 7 years.

Judgment modified and affirmed.