THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH PERRUQUET, Defendant-Appellant.

Fifth District   No. 74-416

Opinion filed August 25, 1976.

Stephen P. Hurley and Thomas F. Sullivan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Howerton, State's Attorney, of Marion, for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant Joseph Perruquet appeals from the judgment of the circuit court of Williamson County sentencing him to a minimum of one year and a maximum of 20 years upon his plea of guilty to the crime of burglary.

The sole question for review is whether the trial court imposed an excessive sentence on the defendant.

The maximum sentence of 20 years for the crime of burglary is the highest sentence the trial court could have imposed for this Class 2 felony. Ill. Rev. Stat. 1973, ch. 38, pars. 19—1(b) and 1005—8—1.

An indeterminate sentence is a definite sentence for the maximum term provided by law for which the sentence is imposed. *People ex rel. Castle v. Spivey,* 10 Ill. 2d 586; *People v. Fowler,* 14 Ill. 2d 252.

The above law is clearly explained in 24B C.J.S. *Criminal Law* §1993 (1962):

> "An indeterminate sentence differs from a determinate sentence only in that the former imposes a minimum term; and an indeterminate sentence is one for the maximum period, subject to termination by the parole board or other agency at any time after service of the minimum period. Under an indeterminate sentence accused remains confined for the period defined by law, less 'good time,' or unless some duly and legally constituted agency, such as the board of parole, intervenes.
>
> The only time at which the prisoner may say that his debt to the state is satisfied as of right is at the expiration of the maximum period, less such good conduct time as may be allowed, or, as it is sometimes stated, the maximum term of punishment can be satisfied only by actual complete service unless remitted by some legal authority.
>
> The 'maximum sentence' in an indeterminate sentence has been held to be the real sentence, whereas the 'minimum sentence' is merely a period at which, and not before, as a matter of grace and not of right, the prisoner may be allowed to serve the balance of his sentence outside of confinement."

A footnote to this language points out on page 614 of the text that the
> "[m]inimum sentence is merely administrative notice by court to executive department, calling attention to legislative policy that when such sentence is about to expire, question of grace and mercy

should be considered and propriety of granting qualified pardon determined."

The Illinois constitution provides that "all penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.) Since the maximum sentence is the "real sentence," the maximum sentence should be directly related to the nature of the offense.

Was the sentence of 20 years excessive in this case?

Prior to accepting the defendant's plea, the trial court explained the possible sentence the defendant could receive in the following language:

"All right, now, if you were found guilty of having violated this law you would be subject to be imprisoned for a term in the penitentiary for not less than one year nor more than 20 years. And in addition you could be fined any amount of money not to exceed $10,000. Or both fine and imprisonment.

So, the Court, if you were found guilty would have to set a penalty between one and 20, would have to fix a minimum and a maximum. And normally the maximum would be three times greater than the minimum. So you could receive a term of imprisonment of six years and six months to 20 years, six to 18, five to 15, four to 12 or one to three or three to nine. And that means if a person is sentenced he would have to serve the minimum with time off for good behavior and then he would be eligible for what we call parole. And if the Parole Board decided to let him out they could do so. If not, keep him in for the maximum.

In other words, if a term is three to nine the person would have to serve three years less time off for good behavior, which would be about two years, and he would be eligible for parole if the Parole Board would let him out, as long as he didn't violate any laws he would be all right. But if he violated any laws he would have to serve the maximum. Which would be nine years. So, any questions about the possible penalty?"

After being properly advised by the trial court of his right to an attorney, the defendant waived that right. The trial court then elicited from the defendant that he entered the building of a person named Ted Brown, removed or attempted to remove approximately 52 cartons of cigarettes, two new tires, and a battery. He and two accomplices were caught in the act.

After accepting the defendant's plea of guilty, the case was continued for a sentencing hearing. The defendant's family retained private counsel for the sentencing hearing. The State presented no evidence in aggravation and did not make a recommendation. The defendant and his wife testified in mitigation. The next day the trial court sentenced the

defendant to a minimum of one year and a maximum of 20 years in the penitentiary, stating at the time,

"* * * I am going to set a maximum to where when you do come out of the penitentiary that either you are going to obey the law, on your own or else they are going to take you and virtually throw the key away."

The summary of the presentence report submitted to the trial court is as follows:

"Joseph Perruquet was born September 3, 1952, in DuQuoin (Christopher) Illinois. He is approximately 5'9" tall, 150 pounds, has brown hair and hazel eyes. He has progressed through eight years of school and indicates that he doesn't know how to read and write. He does have records of attendance, according to him, in parochial (Catholic) school in Herrin, Illinois, St. Charles with the Illinois Youth Commission, and Washington Junior High in Joliet, Illinois. Joe was adjudicated as a delinquent in Williamson County in October 1966 and bounced around in their program until approximately August 1970 when he was discharged of both guardianship and custodianship. On August 19, 1970, Joe was given probation for one year for theft in Will County, Joliet, Illinois. There were also numerous complaints of other activity in the Joliet area, but apparently no criminal charges or dispositions.

In 1972 Joe moved back to Royalton, his home territory, and apparently was working until the company he was employed by (DuQuoin Packing Company) went on strike. From what I can determine from information received and included with this report, Joe hasn't appeared before the court since 1971. He currently has a case pending in Franklin County in which he is to appear September 11, 1974, and this case, 74-CF-78, in Williamson County.

Joseph is married, has one daughter approximately 20 months old, and another child (male) born September 5, 1974, he is presently at the Blackwell Conservation Corps at Laona, Wisconsin. He has finished his preliminary to training in the heavy equipment operators program and apparently will be able to enter depending on the decision of the Court."

The defendant testified at the sentencing hearing that he was 21 years of age, that he went to the 8th grade in school, he didn't go any farther in school because he couldn't read; he still could not read, but he could sign his name. He was presently in the Job Corps training program, training to be a heavy equipment operator. Prior to entering the Job Corps, he had a job at a DuQuoin packing company and had worked there for two years without any trouble until the employees went on strike. When asked for

an explanation of why he had committed the burglary, he said, "I don't know, I needed some money. I couldn't find a job or nuthin'. We just went and did it, just broke in for some money."

■■ While the sole issue on appeal is whether the 20-year maximum is excessive, this case raises serious questions regarding the discretion of sentencing judges and the scope of appellate review of sentencing decisions. Proper resolution of the question on appeal, therefore, requires a thorough and critical analysis of the standards applicable to these two levels of judicial decision making.

The imposition of penalties on convicted defendants is the primary method for achieving the objectives of criminal law. The wide variety and often conflicting nature of these objectives makes the sentencing decision one of the most complex and problematic in the entire criminal justice system. Sentencing judges must attempt to reconcile the goals of rehabilitation, societal protection, promotion of community values, individualization of treatment and equal application of justice in each sentencing decision. Although the sentencing authority of trial judges in Illinois is limited by statutory provisions which set out the permissible range of sentencing alternatives (Ill. Rev. Stat., ch. 38, par. 1005—8—1 et seq.), very little specific guidance as to the appropriate disposition in a particular case is provided and sentencing judges are thus able to exercise considerable discretion in attempting to achieve the various ends of the criminal law. The critical need for decisional consistency and equality of justice, however, demands that some standards governing the exercise of this discretion be established.

The ABA Standards on Sentencing Alternatives and Procedures establish a general principle governing the exercise of judicial discretion in sentencing:

> "The sentence imposed in each case should call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and rehabilitative needs of the defendant." Standard 2.2.

■■ Article I, section 11 of the Illinois Constitution establishes a similar sentencing standard that embodies the dual objectives of societal protection and rehabilitation:

> "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship."

A sentencing court has a responsibility to impose a sentence that will adequately punish the convicted defendant for the offense (*People v. Odom*, 8 Ill. App. 3d 227, 289 N.E.2d 663; *People v. Barge*, 7 Ill. App. 3d 721, 288 N.E.2d 492), protect the public from further offenses (*People v. O'Dell*, 8 Ill. App. 3d 203, 289 N.E.2d 686; *People v. Williams*, 7 Ill. App.

3d 733, 288 N.E.2d 636), individualize the sanction to fit the offender and the offense (Ill. Rev. Stat., ch. 38, par. 1005—8—1(c)) and reform and rehabilitate the offender into a useful member of society (*People v. Schmidt*, 25 Ill. App. 3d 1035, 324 N.E.2d 246; *People v. Jones*, 2 Ill. App. 3d 236, 276 N.E.2d 477). The trial court owes a duty to the accused and to the public and sentencing decisions must reflect a thoughtful balance of these differing interests. (*People v. Bell*, 7 Ill. App. 3d 625, 288 N.E.2d 253; *People v. Holt*, 7 Ill. App. 3d 646, 288 N.E.2d 245.) As was stated by this court in *People v. Harpole*, 97 Ill. App. 2d 28, 239 N.E.2d 471, and reiterated in *People v. Krebel*, 130 Ill. App. 2d 815, 264 N.E.2d 279:

> "The purpose of modern-day penology is the rehabilitation of the offender. That sentence which has the greatest potential of restoring the offender to a useful and productive place in society while at the same time adequately punishing the offender for his misconduct and safeguarding the public from further offenses is the one which should be imposed." 97 Ill. App. 2d 28, 33.

The sentencing court, therefore, is charged with a duty to carefully consider the punishment warranted under the circumstances of the particular case, the protection of the public, and potential for rehabilitation of the defendant, together with the nature of the offense, the character and propensities of the offender, his or her family, work record, past delinquencies and all other pertinent matters. *People v. Buford*, 125 Ill. App. 2d 424, 261 N.E.2d 23.

■■ Comprehensive statements and specific guidelines regarding a sentencing court's duty do not alone insure that that duty will be properly discharged. An essential requisite to a proper exercise of sentencing discretion must be an effective system of appellate review. Fundamental to the American system of criminal justice is a healthy mistrust of unchecked and unbalanced power over essential liberties and the concept of judicial review institutionalizes this mistrust. Effective judicial review does not assume incompetence or illegality, but rather it anticipates the fallibility of human beings and appreciates the self-correcting influence of external observation and review. A former Lord Chief Justice of England has recognized this important aspect of effective judicial review:

> "It is not so much that a conviction is sometimes quashed, or a sentence is sometimes reconsidered. What matters, and matters profoundly, is that everybody engaged in administering the criminal law, upon whatever rung of the ladder he may be, throughout the whole hierarchy, is well aware that a Court of Criminal Appeal is in existence. The consequences of that diffused and abiding knowledge are quite incalculable." Hon. Baron Hewart of Bury, 5 Can. B. Rev. 564, 572 (1927).

The mere existence of a seemingly effective power of appellate review

over sentencing provides a strong incentive for a more careful and thoughtful consideration by the trial judge of the factors relevant to the determination of sentences. Appellate review of sentences, moreover, promotes decisional consistency and the development of definitive policies and specific guidelines with respect to certain types of offenses and offenders. See generally, Thomas, Sentencing—The Case For Reasoned Decisions, 1963 Crim. L. Rev. (Eng.) 243.

■■ Appellate courts in Illinois are empowered to review and in a proper case reduce a sentence imposed at trial. (Supreme Court Rule 615(b)(4), Ill. Rev. Stat., ch. 110A, par. 615(b)(4).) The purpose of this power to reduce sentences is to prevent arbitrary or oppressive treatment of offenders and to provide sanctions that are both warranted under the circumstances of the case and that comprehend differences in the rehabilitation potential of various offenders.

The ABA Standards relating to Appellate Review of Sentences establish a permissible scope of sentencing review:

"The authority of the reviewing court with respect to the sentence should specifically extend to review of:

(1) The propriety of the sentence, having regard to the nature of the offense, the character of the offender, and the protection of the public interest; and

(2) The manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which it was based." Standard 2.2.

After carefully considering the seriousness of the offense and the history and character of the defendant, we believe the maximum sentence in this case should be reduced to five years.

For the foregoing reasons the judgment and sentence of the circuit court of Williamson County is modified to provide that the sentence imposed on the defendant be confinement in the penitentiary for a minimum of one year and a maximum of five years.

Judgment affirmed as modified.

JONES and CARTER, JJ., concur.