2 Ill. App.3d 693 (1971)
276 N.E.2d 775
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
KELLY PAYTON, Defendant-Appellant.
No. 69-107.
Illinois Appellate Court  Fifth District.
December 6, 1971.
*694 Morton Zwick, Director of Defender Project, of Chicago, (Kenneth L. Gillis, of Defender Project, of counsel,) for appellant.
Robert H. Rice, State's Attorney, of Belleville, (Charles Stegemeyer, Assistant State's Attorney, of counsel,) for the People.
Judgment affirmed.
Mr. JUSTICE CREBS delivered the opinion of the court:
The defendant, Kelly Payton, was convicted of the crime of attempted murder in a jury trial in the circuit court of St. Clair County and received a sentence of not less than eight nor more than fifteen years in the penitentiary. In this appeal he contends that his indictment was fatally defective, that he was not proved guilty beyond a reasonable doubt, and that the trial court erred in not excusing a juror allegedly partial, and in allowing the prosecutor to make an unfair characterization of witnesses in his final argument. In addition he argues that his sentence was excessive. In the same trial defendant was also convicted of unlawful use of weapons, but no appeal has been taken from this conviction.
 1-3 The indictment charged, "That on the 12th day of November, 1968, in said County, Kelly Payton, committed the offense of attempt in that he, with intent to commit the offense of Murder fired a gun at the person of James H. Martin, in violation of Ill. Rev. Stat., ch. 38, par. 8-4." Defendant argues that this indictment was fatally defective in that it failed to allege that the shooting was knowingly committed with intent to cause death or great bodily harm and failed to negate the possibility *695 that it was done with justification. The argument is without merit. The test of a proper indictment is whether it adequately informs an accused of the nature and cause of the accusation against him so as to enable him to make preparation for his defense and to plead the judgment in bar of a subsequent prosecution. (People v. Drink, 85 Ill. App.2d 202.) Also, a gun is a deadly weapon per se and one who deliberately fires a gun at or towards another person, either with malice aforethought or with a total disregard of human life, may be convicted of assault with intent to kill. (People v. Wilson, 342 Ill. 358.) Here the indictment plainly alleges that defendant, using a gun, attempted the murder of a specified person on a specific date in a designated county. We hold this to be sufficient. Further allegations as to the manner of the attempt or whether it was without justification constitute matters of evidence and need not be set forth in the indictment.
Defendant's other contentions necessitate a somewhat detailed recital of the background leading up to the shooting. The complaining witness, James Martin, testified that about one month prior to the incident he and his wife had separated amicably and that she had moved to an apartment for which he had supplied most of the furniture. During this month he visited his wife on several occasions and on November 6th he first met defendant at his wife's apartment at which time they engaged in a friendly conversation. On November 12th Martin stated that he again visited his wife's apartment about 9 or 10 o'clock in the morning for the purpose of discussing a final settlement as to their property. Receiving no answer to his knock at the front door he went to the rear and looking in the window he saw his wife and defendant standing next to the bed in their pajamas. On his threat to kick in the door his wife let him in and defendant ran out the front. He accused his wife of "shacking up" with defendant and after some discussion he demanded and took her wedding rings and wrist watch and told her he was going to Collinsville for his pick-up truck and some help so he could also remove his furniture. In Collinsville Martin contacted his son, his brother and his nephew, all of whom worked for him in his appliance store. It was suggested that the police should be contacted first in case they might need protection on their return to the apartment, so they all stopped at the police station. The police sent them to the State's Attorney's office where they waited for 15 minutes until they were told that nothing could be done until something happened. They then headed for the apartment with Martin and his son in the panel truck and the other two men following in the pick-up.
As the panel truck approached the apartment Martin called son's attention to defendant coming out the front door. Both Martin and his son *696 testified that defendant, upon seeing them, extended his arm, sighted his gun and shot twice, both bullets slamming into the side of the truck about 18 inches from Martin who was driving. At the time they were about 100 feet from defendant driving on the opposite side of the street from the apartment. Martin accelerated his truck, got behind a bus and drove a block away. Looking back both of them could see defendant still coming towards them so they hollered to the men following in the other truck to call the police. They then pulled quickly away and went to the State's Attorney's office to swear out a warrant. Martin further testified, as did all of those accompanying him, that neither he nor did anyone of them have a gun or make any threatening gesture whatsoever toward defendant.
A police officer testified that he arrested defendant about one-half block from the apartment and that defendant denied taking part in any shooting. However, in defendant's pocket the officer found one live .22 caliber shell and one casing, and five.38 caliber wadcutter flat head shells, two of which were spent. He also testified that such .38 caliber shells would make similar indentations as were made in Martin's truck.
For the defense Mrs. Martin reiterated her husband's testimony as to their amicable separation, his help in moving, his visits and his friendly meeting with defendant. But, she testified defendant was not present when her husband came to her apartment on the morning of November 12th; that her husband had knocked on the front and back door and only after she had changed from her pajamas to her slacks did she decide to let him in; that when she opened the door he came bursting in with a gun in his hand, that he hit her, choked her, tore her clothing, tried to rape her, took her rings and other jewelry and told her he was going to Collinsville to get a truck to move all the furniture, and that when he returned neither she nor defendant better stand in his way or he would kill them both. She stated that not until her husband left did defendant come to the apartment. She told him what had happened but that he did not have to worry for she was going to kill her husband first. She said defendant took a small.22 caliber gun from her and stated that he would get a truck and they would get everything moved out before her husband came back. As defendant was leaving by the front door she was in the hallway and she saw defendant raise his arm and she heard two shots fired but that she saw nothing further.
Defendant testified that he had known Mrs. Martin for approximately two and one-half months; that they worked the same night shift at a nearby hospital. He stated that he had visited Mrs. Martin's apartment, had helped her in fixing it up, but that he had never been intimate with her. He denied that he was present when Martin first came to the apartment *697 on the morning of the shooting but stated that he had arrived later and after hearing Mrs. Martin's story he started out the door to get a truck to help her move. At this time he saw Martin's TV panel truck coming up the street, heard a shout, saw a guy pointing an object out the window, and that "just to scare him" he fired two quick shots. He then ran and did not follow Martin's truck. He admitted that when he was later stopped by the police he denied being involved in any shooting. In explanation of the shells in his pocket he stated he used them in target practice and they just happened to be in his pocket from the last time he had practiced.
 4, 5 On these facts defendant contends that he was not proven guilty beyond a reasonable doubt because no specific intent to harm or kill was shown, nor was there any evidence that he bore any malice or ill-will towards Martin. It is true that intent and malice are essential elements of the offense charged but such elements need not be proved directly. It is sufficient if in making the assault a person is shown to have acted with such a wanton and reckless disregard of human life as to denote malice, and under such circumstances that if death had ensued the killing would have been murder. The consequences of such an act clearly give rise to a presumptive intent. (People v. Coolidge, 26 Ill.2d 533; People v. Carter, 410 Ill. 462.) Here defendant admitted that he deliberately shot twice at Martin, ostensibly only to scare him but yet in each instance missing by only 18 inches at 100 feet. We find such act clearly demonstrated a total disregard of human life and that under all the facts and circumstances of the case the defendant was proved guilty beyond a reasonable doubt and the verdict of the jury was fully justified.
 6, 7 With reference to the question posed by defendant that the court erred in refusing to discharge a juror for partiality, it appears that after the trial had commenced and the complaining witness had testified one juror discovered and reported to the court that he was employed by a brother of the complaining witness. This fact was not known to him at the time of the voir dire. When the court brought these facts to the attention of the attorneys in chambers defendant's counsel moved for a mistrial. The court offered to discharge the juror and substitute one of the alternate jurors but defense counsel refused to consent to such procedure stating that if he did so he was afraid he would thereby waive any error he might have if the court refused to grant a mistrial. The court then explained that he had examined the juror and had determined that the acquaintance of the juror with the brother of Martin was not close and that he could and would be fair to both sides, that under such circumstances he could not discharge him without the consent of defendant. When defendant persisted in his refusal to consent to the discharge *698 and also to the substitution of the alternate juror, the court denied the motion for a mistrial and the trial proceeded with the original juror on the panel. We agree with the trial judge that since the juror's mere acquaintance with Martin's brother would not have been grounds for a challenge for cause he could not, over defendant's objection, arbitrarily substitute the alternate juror. To have done so might very well have furnished a sufficient basis for a subsequent claim of double jeopardy. (See 21 Am.Jr.2d, Criminal Law, Secs. 198 and 199.) Under these circumstances we find defendant's refusal to consent to the offers of the court constituted a waiver of any objection he may have had to the juror in question and his motions for a mistrial and a new trial on such grounds were properly overruled.
 8 We have carefully examined the record relative to defendant's next contention of improper argument on the part of the prosecutor, but we do not believe it necessary to burden this opinion with the details. Suffice it to say that the argument was not only mild and innocuous, but also was invited by remarks of defense counsel and defendant cannot claim prejudice for such rejoinder. People v. Hardaway, 108 Ill. App.2d 325.
 9 Finally, defendant contends that his sentence was excessive. Before imposing sentence the trial court had an excellent opportunity to make a sound determination relative to sentence in view of the length of the probation hearing and the number of persons heard. Defendant himself, then 29 years of age, admitted that in his youth he had been convicted of armed robbery, pandering and stealing a car, receiving probation of three years and one year respectively on the first two convictions, and a sentence of one year and three months on the last one. It was clearly evident that defendant could be helpful and personable in many community projects when the occasion demanded, but likewise it was equally apparent from the facts of the case itself that he could be irresponsibly violent with an absolute disregard for human life when it suited his purpose. With little or no provocation or excuse he deliberately chose to take the law unto himself and summarily settle a domestic dispute between two individuals by attempting to kill one of them. Under such circumstances we cannot say that the trial court abused its discretion in imposing the sentence he did.
The judgment of the circuit court of St. Clair County is affirmed.
Judgment affirmed.
EBERSPACHER, P.J., and MORAN, J., concur.