THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH GIBBS, Defendant-Appellant.

First District (3rd Division)   No. 62454

Opinion filed June 1, 1977.—Rehearing denied June 22, 1977.

James J. Doherty, Public Defender, of Chicago (Gary G. Stanton and Judith A. Stewart, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Larry L. Thompson, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

The defendant, Joseph Gibbs, was charged with the murder of Isidora Colon. A jury found him guilty of murder. The court sentenced the defendant to 50 to 100 years in the State penitentiary. The defendant raises the following points on appeal, (1) the propriety of the State's cross-examination of the defendant concerning his willingness to admit to killing Isidora Colon: "if you had killed him you would tell us, wouldn't you," and the reference to this testimony in closing argument; and (2) the propriety of the 50- to 100-year sentence in view of the defendant's background and the mandate of article I, section 11 of the Illinois Constitution of 1970.

On the night of the killing, the defendant was at a party with several

persons. During the evening the defendant and Dana Wall and others left the party to go over to the apartment of the victim to obtain a sweater of a rival gang. Dana Wall testified that he was with Gibbs when Gibbs knocked on the victim's apartment door and he saw the defendant shoot and kill the victim when the victim opened the door in answer to the knock. Thomas Rodriguez, who was a roommate of the victim, testified that he was present in the apartment with the victim when the knock on the door was heard, saw the victim open the door and saw the defendant shoot and kill the victim. No motive for the crime was established save the suggestion that the victim and the defendant were members of rival street gangs, which suggestion, however, was never established to be a fact. Two alibi witnesses, Clarence Kidd and Michael Trier, testified that the defendant was with them at a party and that the defendant did not leave the party during the course of the evening but left the party only when it was over, which was several hours after the shooting. The defendant testified on his own behalf, denying his involvement in the shooting and claiming to have been at the party at the time of the killing.

## I

The last question put to Gibbs on direct examination was, "Did you kill Isidora Colon?" To this question Gibbs replied, "No, sir." The first questions asked on cross-examination were:

Q. "If you had killed him you would tell us, wouldn't you, Mr. Gibbs?

Defense Counsel: That is objected to as to form.

The Court: You may answer.

The Witness: What?

Assistant State's Attorney: If you had killed him you would tell us, is that right?

A. No, I wouldn't.

Q. You wouldn't?

A. I don't think so."

Nothing further was said during the cross-examination of the defendant or in the State's initial closing arguments concerning the above questions and answers. However, in the defendant's closing argument, the following statements were made:

"If you recall, when I was standing right here and I said to [Assistant State's Attorney], you can cross-examine, and I was walking back, before there was—my last question was, did you kill Isidora Colon, and he said no. Before I even got back to my seat, and you heard the rapidity with which [Assistant State's Attorney] talked and its no reflection on him, that's his way. He said, would you tell us that you murdered this man if you did?

Now that's a pretty difficult question. Here is a man 19 years old, he's in trouble, he's on trial. And this is a pretty difficult question. If it were myself I would think of it a long time. But what did he say immediately before even I got back to my seat? He said no. I wouldn't. Now what does it mean? How do you interpret that? I think based on that you can interpret his whole testimony. It means that's the way he feels—

It means that he told the truth. That is the way he feels. If he had done it he wouldn't have told you, but that doesn't necessarily mean he did it. That means he told the truth to you people even though it might have embarrassed and hurt him. That is very important. Because if you feel that way about that testimony, then you can feel that way about all his testimony."

On rebuttal, the prosecution replied to the defense's interpretation of the defendant's response to the question. Without objection from the defendant, the assistant State's attorney stated:

"In court my first question on cross-examination, when you consider the testimony of the defendant under oath, I asked him, if you had killed Isidora Colon would you tell us? He said no. Consider that answer and apply that answer, ladies and gentlemen, to the remainder of his testimony, you see if you can believe that man. Whether you can believe the three little gangsters from the Jousters, the three musketeers."

■■ ■ A reviewing court will not reverse for errors in admitting evidence or allowing improper comments "unless it can be seen that the error was prejudicial." (*People v. Pelkola* (1960), 19 Ill. 2d 156, 162, 166 N.E.2d 54; *People v. Henderson* (1976), 36 Ill. App. 3d 355, 344 N.E.2d 239.) There is sufficient competent and credible evidence in this case to establish guilt beyond a reasonable doubt independent of any taint which the question, if improper, and comments by the State may have had. Two eyewitnesses identified the defendant as the person who shot and killed the victim. It is urged that the two alibi witnesses were at least as credible as the State's eyewitnesses and that the question on cross-examination and the rebuttal arguments contributed to influence the jury's decision to disbelieve the defendant's contention that he had not killed Colon. The court is not in a position to review the jury's determination as to the credibility of the witnesses, nor is it evident that the impact of the question in dispute, its answer, and the later rebuttal argument, was negative with respect to the defendant's case. Gibbs' own counsel presented a logical, believable and positive interpretation of the cross-examination in his closing argument. The court finds the question, if improper, harmless on the authority of the standard of *Pelkola* and *Henderson*.

## II

■■ The defendant has also appealed from the 50- to 100-year sentence imposed by the trial court. This court is empowered to reduce the punishment which has been set by the trial court. Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4)).

Generally a sentence on review will not be disturbed unless it is "greatly at variance with the purpose and spirit of the law or manifestly in excess of the proscription of * * * the Illinois constitution which requires that all penalties should be proportioned to the nature of the offense." (*People v. Fox* (1971), 48 Ill. 2d 239, 251, 269 N.E.2d 720. See also *People v. Taylor* (1965), 33 Ill. 2d 417, 211 N.E.2d 673.) There are cases, however, which call for this court to reduce the sentence which has been imposed even when such sentences are within the statutory limits. (See *People v. Wilkins* (1976), 36 Ill. App. 3d 761, 344 N.E.2d 724; *People v. O'Dell* (1972), 8 Ill. App. 3d 203, 289 N.E.2d 686, *cert. denied*, 412 U.S. 920; *People v. Gill* (1972), 7 Ill. App. 3d 24, 286 N.E.2d 516; *People v. Golden* (1971), 1 Ill. App. 3d 947, 274 N.E.2d 892.) No precise formula exists pinpointing which sentences are to be affirmed or reversed. Consequently, many sentences are affirmed with little comment. This case, however, calls for a careful assessment of the trial court's appreciation of the mandate now called for by article I, section 11, of the Illinois Constitution of 1970.

This State's fundamental law requires that "All penalties shall be determined both according to the seriousness of the offense *and with the objective of restoring the offender to useful citizenship.*" (Emphasis added.)(Ill. Const. 1970, art. I, §11.) Usually the cases have treated this mandate as calling for a balancing of the retributive and rehabilitative purposes of punishment. Looked at from this perspective, one might justify a sentence which has been given merely by determining whether or not the trial judge considered the possibility of rehabilitation as compared to a proper retributive sanction based upon the seriousness of the offense and the character of the defendant and his conduct. If this be the appropriate analysis any record which demonstrates an acknowledgment of the rehabilitative purpose could be affirmed providing the sentence was within the statutory limits.

The constitutional mandate, however, requires more. Not only must the judge consider the rehabilitative or restorative factor, he must also act on it as an objective of his sentence. Some degree of discretion is permitted within the legislative perimeters establishing our indeterminate system of sentencing, but the judge may not resign to total retribution one who has a chance of future restoration to useful citizenship in the free society. Our legislature has determined that adequate retribution for the crime of murder at times may be satisfied by a minimum sentence of 14 years in the penitentiary. (Unified Code of Corrections, section 5—8—1(c)(1) (Ill.

Rev. Stat. 1975, ch. 38, par. 1005—8—1(c)(1)).) If rehabilitation does not occur within that period of time, or if release is unwise for other reasons following the 14 years, a longer maximum term has been provided. Each case, of course, must be considered separately for its own particular illumination of, and response to, the meaning of the mandate. The nature and circumstances of the offense and the history and character of the defendant will be the governing factors. See also section 1—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 1—2(c)).

■■ The record before us indicates that Gibbs was 19 years old, was steadily employed, lived with his parents and contributed to their income, and had no previous criminal record at the time of his sentence. It may be difficult to appreciate the rehabilitative capacities of this man; however, such is required by the constitution of our State. Accordingly, we feel that both the minimum and maximum terms should be reduced to reflect this requirement. We, therefore, modify Gibbs' sentence to be not less than 15 years and not more than 45 years in the State penitentiary. This modification recognizes the seriousness of the offense and the manner in which it was committed, but it also allows the prison and parole authorities to determine the rehabilitative progress of the defendant and to respond accordingly within a reasonable time span.

Judgment affirmed, as modified.

SIMON, P. J., and JIGANTI, J., concur.