THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT EARL HARVEY, Defendant-Appellant.

Fourth District   No. 4—87—0050

Opinion filed October 22, 1987.

Daniel D. Yuhas and Patricia G. Mysza, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Linda Cullom, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

After a trial by jury in the circuit court of Champaign County, defendant Robert Earl Harvey was convicted of burglary on December 10, 1986. The court subsequently sentenced him to 20 years' imprisonment. He appeals, contending: (1) his guilt was not proved beyond a reasonable doubt; (2) reversible error occurred when the trial court filled a vacant seat upon the panel of jurors selected and sworn to try the case; (3) he was denied effective assistance of counsel; (4) new counsel should have been appointed to represent him in regard to his post-trial motion; and (5) the sentence was excessive. We conclude that any error which occurred was harmless and affirm.

■ We address first the question of the sufficiency and strength of the evidence. If it is not sufficient to justify a reasonable jury determination that defendant's guilt was proved beyond a reasonable doubt, we must reverse without remandment and need not consider defendant's other assertions. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) We consider the strength of the evidence, because that question bears upon our ruling on other issues. We conclude that the evidence supported the verdict, and the proof of guilt was sufficiently strong that no reversible error occurred.

Calvin Winston testified that on September 1, 1986, at approximately 1:30 a.m., he was across the street from an American Legion

post in Champaign, when he heard glass breaking and saw a black man enter the building. Officer Ronald Seeley of the Champaign police testified that he arrived at that scene approximately four minutes later and shined a spotlight through the broken window. Seeley stated that for three or four seconds, he observed a man inside the building and then saw that man move to the north and run out of an exit to the building. According to Seeley, he was 30 feet from the door which the man passed through. He described the man as being 5 feet 6 inches in height and weighing 160 to 170 pounds. He stated that he then chased the man as he ran north between the two houses in the 500 block of East Columbia Street.

Seeley further testified that as the man ran between the houses, he temporarily lost sight of him but heard what sounded like the clanging of a fence. Seeley said he then went to the back of one of the yards, climbed a fence and heard Officer Jim Spires yell that a man had been caught. Seeley identified defendant as the man he had seen leaving the building and had then chased. He stated that he never lost sight of that man for more than 10 seconds during the chase, and he saw no other foot traffic in the area at the time.

Champaign police officer Holly Nearing also testified she arrived at the American Legion post and drove to the 500 block on East Columbia. She said she then saw a shirtless black man running north toward her vehicle, whereupon she shined a spotlight on the man. Nearing stated that when the man was approximately 60 feet from her, the man jumped a fence and ran behind a house. At trial, Nearing identified defendant as the man on whom she had shone the light. She also stated that she traced the route she had seen defendant run and found a plastic box marked "25 cent phone calls." Nearing confirmed Seeley's statement that no people other than the police and defendant had appeared in the area at the time.

Officer Spires testified that he arrived on the scene and joined in the chase of a man at the corner of Sixth and Washington Streets. He described the man being chased as a black man with no shirt. Spires said that during the chase, he lost sight of the man for a few seconds. He said he then saw him standing between a garage and an automobile, whereupon he arrested the man. The man was then panting and breathing very heavily, according to Spires. That witness identified defendant as the man he arrested but was unable to say whether defendant was the man he had originally seen running.

The evidence also showed that when defendant was placed under arrest, defendant was clutching a purple velvet bag of a kind normally used for bottles of liquor. Other testimony indicated that the

American Legion post bar had been ransacked. Also, testimony showed that the plastic file box containing money found on the front hood of a car parked near where defendant was apprehended and in the path which the man being chased had taken had been near the telephone at the Legion post.

In contending that the proof of defendant's guilt was insufficient, defendant relies upon the statement in *People v. Cullotta* (1965), 32 Ill. 2d 502, 207 N.E.2d 444, that a conviction cannot stand when the evidence of identification of the accused is doubtful and uncertain. Such was not the case here. While Seeley was the only one to positively identify defendant as the person leaving the building and being chased, his testimony was strong. He testified to having a good look at the man in the building and leaving it, and he lost sight of the man for only a few seconds during the course of the chase. He identified the man chased as the man arrested. Seeley testified to hearing the sounds of a fence being jumped near where he lost sight of the man he was chasing. Nearing testified that she saw a man jump a fence at about that time in that area, and Spires testified that he arrested defendant near the fence over which Seeley peered during the few seconds when Seeley lost sight of the man he had been chasing.

Other circumstantial evidence was also convincing. All those participating in the capture of defendant described the person being chased and captured as a black man who was not wearing a shirt. The testimony concerning defendant's condition at the time of arrest indicated that he had been running for some time. Defendant's possession of the purple bag corroborated testimony that he had been in the building burglarized and the evidence of the file box in the route followed by the man being chased indicated that the person being chased was likely to be the person who had been in the building. All of the foregoing testimony was uncontradicted. The chance that defendant was not the person who had been seen by Seeley in the building but a black man without a shirt who was also running in the same area at the same time was extremely remote and unlikely.

As we have stated, the evidence supported the jury's finding that defendant was guilty. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) Except for the minor uncertainty created because Seeley lost sight of the person he was chasing for a few seconds, and others did not identify defendant as the man being previously chased, the proof of guilt was overwhelming.

■ We now turn to the question of the propriety of the manner in which a vacant seat on the regular jury was filled. The question

arose after 12 regular jurors had been selected and sworn to try the case, but before any alternate jurors had been called into the box and before the jury had heard any opening statements or evidence. The clerk of the court then informed the judge who was assigned to the case for purposes of jury selection that one of the sworn jurors was not going to be able to try the case. The parties agreed that juror could be excused, but that juror was not immediately excused. Two alternate jurors were then selected in the required manner. The judge then suggested that the proper way to replace the excused juror was for the clerk to select, at random, the name of another prospective juror. That judge maintained that the person whose name was selected should then undergo *voir dire* examination. The defense objected, asserting that the first named alternate should be directed to replace the excused juror on the regular panel. The objection was overruled, and the court excused the juror claiming to be unavailable. Then, that seat was filled by drawing from the cards containing names of available members of the venire. The judge assigned to try the case then took charge. The defendant then made a further objection to the procedure, which that judge overruled.

The dispute concerns section 115—4(g) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—4(g)) and Illinois Supreme Court Rule 434(e) (107 Ill. 2d R. 434(e)), which control the selecting and impaneling of alternate jurors. The language of the two provisions has no material difference. Section 115—4(g) states:

> "After the jury is impaneled and sworn the court may direct the selection of 2 alternate jurors who shall take the same oath as the regular jurors. *** If before the final submission of a cause a *member of the jury dies or is discharged he shall be replaced by an alternate juror in the order of selection.*"
> (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 115—4(g).)

Both the legislation and the rule expressly state that the period of time when an alternate juror must be substituted for a deceased or discharged regular juror ends when the case is submitted to the jury. Neither provision expressly states when that period begins.

Nothing in either section 115—4(g) or Rule 434(e) implies that the period for making replacements by use of alternates begins at any time other than when the jury has ben "selected and sworn." That is the time when jeopardy attaches. (*Crist v. Bretz* (1978), 437 U.S. 28, 57 L. Ed. 2d 24, 98 S. Ct. 2156.) Most importantly, both the legislation and the rule state that where a juror, selected and sworn, is *"discharged"* (emphasis added) or dies, that juror shall be replaced by an alternate juror. Prior to the selection and swearing of jurors,

those relieved from service are excused. One who has been selected and sworn can only be relieved of the duty of service by discharge or death. The juror relieved of duty here was discharged and should have been replaced by an alternate juror. The court erred in not doing so.

However, any prejudice to the defendant here because of the method of filling the empty seat is not ascertainable. The juror called into the box and selected was one whose name was drawn at random from a group of eligible jurors. That juror was with the jury from the time of opening statements until the verdict was accepted. No showing was made that the juror was prejudiced by anything that occurred between the swearing of the other regular jurors and the swearing of that juror. The defendant was not prejudiced by the lack of peremptory challenge which would be available in the selection of each alternate juror because he had not exhausted his peremptory challenges at the time the additional juror was selected. The strength of the evidence of defendant's guilt negated any likelihood that subtle inadequacies in the procedure followed would have brought about the conviction.

■ In cases not fully in point, failure to follow statutory requirements in selection of jurors has been held not to require reversal. Such was the ruling in regard to a failure to follow the statute in the selection of an array in *Mitchell v. Louisville & Nashville R.R. Co.* (1941), 310 Ill. App. 563, 35 N.E.2d 81, *rev'd on other grounds* (1942), 379 Ill. 522, 42 N.E.2d 86. Similarly, error in substituting an alternate juror for one who had died was held not to be plain error in *People v. Henderson* (1977), 45 Ill. App. 3d 798, 359 N.E.2d 909. We are aware that, here, the defendant objected to the method of filling the seat of the discharged juror and preserved that point for review. However, under the circumstances here, including the fact that the failure to follow prescribed procedures occurred before the jurors began to function as a jury, we hold that the error was not reversible. Nevertheless, we do not intend to set a precedent of approval for this procedure.

■ Defendant's contention as to deprivation of his right to counsel begins with a statement he made to the court on the first day of trial, prior to the selection of the jury. Defendant complained at that time concerning a substitution of assistant public defenders assigned to represent him. The one who had worked with him was unavailable, and James Kuehl appeared in his behalf. He told the court that he had reviewed the discovery material but had not discussed the matters with the defendant. Defendant contended that Kuehl had not

contacted an alibi witness named Sam Mann, who defendant stated would say the defendant was with him at the time of the burglary. Kuehl stated that they had not talked to Mann, but that he and the other defender who had been representing defendant had agreed that Mann's testimony would not be helpful to defendant. The court denied defendant's objection to Kuehl's representation and refused to appoint other counsel.

After conviction, Kuehl filed a post-trial motion on behalf of defendant alleging that the court should have granted the defendant's request for other counsel, because Kuehl had not interviewed Mann. Kuehl stated to the court at the hearing on the motion that he felt required to do this, because defendant had raised the issue. The post-trial motion was denied.

On appeal defendant maintains that the record shows that counsel was incompetent for not interviewing Mann and that, for this reason alone, he is entitled to a new trial. He cites *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203, and *People v. Krankel* (1985), 131 Ill. App. 3d 887, 476 N.E.2d 777, for the rule that the failure to contact known witnesses, whose testimony may be exonerating, is incompetence of counsel. Defendant also urges that, when he contended at his post-trial hearing that his counsel was incompetent, the court was required to appoint new counsel, and the failure to do so entitled him to at least a new post-trial hearing. He cites *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045, and *People v. Simpson* (1984), 129 Ill. App. 3d 822, 473 N.E.2d 350, in support of this theory.

We need not discuss the foregoing theories in detail. As we have indicated, the evidence of defendant's guilt here was overwhelming. Testimony of a person whom defendant described to his counsel as an alibi witness, that would say that defendant was with him at the time, would obviously have been worthless. Any failure to interview such a witness would not have deprived defendant of a fair trial. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) This court has held that failure to appoint new counsel for a post-trial hearing upon allegation of incompetence at trial does not always require substitution of counsel. (*People v. Jackson* (1985), 131 Ill. App. 3d 128, 474 N.E.2d 466.) This is the perfect example of such a case.

■ We find no abuse of discretion to be involved in regard to defendant's sentence. The evidence showed that defendant had been convicted of four prior Class 2 felonies. Although the amount of money taken in the instant offense was minor, the crux of the of-

fense was the unlawful entry. Although the court, with substantial justification, stated that defendant had very little rehabilitative potential, the court did not violate the admonition of *People v. Gibbs* (1977), 49 Ill. App. 3d 644, 364 N.E.2d 491, not to impose a sentence that was totally a matter of retribution on a person having some chance of rehabilitation. Rather, the court imposed a sentence 10 years less than the maximum upon a recidivist whom the court deemed to have little likelihood of becoming rehabilitated. The court was justified in giving little weight to defendant's claims of making improvement before the commission of his latest offense.

■ Defendant maintains that the court impermissibly increased his sentence time, because of his prior offenses. (*People v. Hobbs* (1981), 86 Ill. 2d 242, 427 N.E.2d 558.) He asserts that the only aggravating factor found to exist was defendant's prior convictions. That was the basis of elevating the offense for which he was convicted to a Class X felony. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(8).) We do not interpret the rule of *Hobbs* to require that a convict whose sentence is enhanced to a Class X status because of recidivism to be entitled to a near minimum sentence if no other aggravating factors are present. Only two prior Class 2 felonies were necessary to permit the imposition of the enhanced Class X sentence. Surely, the court was entitled, without being guilty of improper double enhancement, to impose a more severe sentence on this defendant than would have been imposed had the defendant only committed two prior Class 2 felonies. (See *People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138.) The sentence was within the court's discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

We affirm the conviction and the sentence.

Affirmed.

SPITZ, P.J., and McCULLOUGH, J., concur.