THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES TURNER, Defendant-Appellant.

First District (6th Division)   No. 1—86—3329

Opinion filed July 28, 1989.

Michael J. Pelletier and Karen Daniel, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Patrick Brady, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LaPORTA delivered the opinion of the court:

Defendant, James Turner, was indicted by a grand jury on one count of burglary under section 19—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 19—1(a)). A jury found him guilty of burglary, and defendant was sentenced to 12 years' incarceration. Defense filed a motion for new trial on the ground that defendant had not been found guilty beyond a reasonable doubt, which was denied, and the defendant appeals.

The essential facts of this case, as shown at trial, are that at approximately 6:45 p.m. on December 30, 1985, three agents of the Chicago Northwestern Transportation Company (CNW) were on surveillance, sitting in two cars at the CNW's Wood Street railyard. One agent saw several persons enter the yard, and one of the party broke into a sealed railcar, tossing boxes out to his companions. The agents gave chase and apprehended the defendant, who was identified in court as the person who had broken into the railcar.

Defendant claims that he was driving in the vicinity when boxes fell from a viaduct in front of his car; that he left his car to investigate; and that he ran when he saw the CNW agent chasing him and another, unidentified, person. Defendant was arrested and subsequently charged in a single-count indictment with burglarizing a railroad car.

Defendant raises three issues on appeal: (1) whether he was subjected to double jeopardy by the court's dismissal and replacement of a juror during *voir dire*; (2) whether the trial court erred in admitting proof of the defendant's prior convictions on rebuttal to impeach his testimony; and (3) whether the defendant's extended term sentence was excessive.

The first inquiry must be whether the issues raised by the defendant upon appeal should be addressed, because they were not raised in the defendant's motion for a new trial. "The motion for a new trial shall specify the grounds therefor." (Ill. Rev. Stat. 1987, ch. 38, par. 116—1(c).) Here the defense argued only "[t]hat the defendant was not

found guilty beyond a reasonable doubt."

Failure to raise an issue in the motion for a new trial acts as waiver of that issue. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274; *People v. Caballero* (1984), 102 Ill. 2d 23, 31, 464 N.E.2d 223, 227, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed. 2d 298, 105 S. Ct. 362; *People v. Szabo* (1986), 113 Ill. 2d 83, 93, 497 N.E.2d 995, 999, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 181, 107 S. Ct. 1330, *rehearing denied* (1987), 481 U.S. 1025, 95 L. Ed. 2d 520, 107 S. Ct. 1915.) However, there are exceptions to this rule, and because each issue falls within a different exception, they will be addressed as each issue is discussed.

Defendant first argues that he was placed in double jeopardy when a prospective juror who had been selected and sworn was later excused during *voir dire*. The record discloses that during *voir dire*, and after he had been selected and preliminarily sworn to serve on the jury, Edward White volunteered the information that he had been convicted of and incarcerated for a crime and that another member of his family had also been convicted of a crime. White stated that he could give both sides a fair trial, and the court stated that it could not excuse him for cause. On the State's peremptory challenge, and over the defendant's objection, the court excused White from the jury. Another juror was selected to complete the panel of 12. While the Illinois Code of Criminal Procedure of 1963 provides that the court may authorize the selection of alternate jurors, it is not required to do so. (Ill. Rev. Stat. 1987, ch. 38, par. 115—4(g).) *Voir dire* then continued until two alternates were selected. At the conclusion of the *voir dire*, all 12 jurors and the two alternates were sworn.

Although this issue was not presented in defendant's post-trial motion, defendant contends that timely objection at trial preserves the issue for review even without inclusion in defendant's post-trial motion for a new trial. The Illinois Supreme Court in *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, affirmed that "*[b]oth* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphasis in original.) (*Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130.) The court further stated that the fact that an objection was made at trial "does not justify ignoring the clear mandate of the statute that the question be set forth in writing in the motion for a new trial." *Enoch*, 122 Ill. 2d at 187, 522 N.E.2d at 1130; see also *People v. White* (1989), 181 Ill. App. 3d 798, 803, 537 N.E.2d 1315, 1318.

While holding that failure to preserve an issue by raising it at trial

and in a post-trial motion constitutes a waiver of the issue for purposes of appeal, the court in *Enoch* acknowledged an exception to the waiver rule for a constitutional question. (*Enoch*, 122 Ill. 2d at 190, 522 N.E.2d at 1132.) The Illinois Constitution, article I, section 10, provides that "[n]o person shall *** be twice put in jeopardy for the same offense." (Ill. Const. 1970, art. I, §10.) Clearly, the issue of double jeopardy raised by the defendant here is a constitutional issue and it should be reviewed even though not raised in a post-trial motion.

The defendant argues that he was twice placed in jeopardy for the crime of burglary and that his conviction should be vacated because one prospective juror was excused after he had been accepted, but before the alternates were chosen. The query that must be decided by this court is, when does jeopardy attach?

The Illinois statutory provision regarding double jeopardy states in pertinent part:

"A prosecution is barred if the defendant was formerly prosecuted for the same offense, based upon the same facts, if such former prosecution:

* * *

(3) Was terminated improperly after the jury was impaneled and sworn or, in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of facts, or after a plea of guilty was accepted by the court." Ill. Rev. Stat. 1987, ch. 38, par. 3–4(a).

■ It has long been held that the jury must be "empaneled and sworn" before jeopardy attaches. (*Downum v. United States* (1963), 372 U.S. 734, 737-38, 10 L. Ed. 2d 100, 102, 83 S. Ct. 1033, 1035; *Serfass v. United States* (1975), 420 U.S. 377, 388, 43 L. Ed. 2d 265, 274, 95 S. Ct. 1055, 1062.) The defendant here argues that this occurred when the jurors were sworn in their panels of six, even though they were later resworn as a full panel with the alternates just before the trial commenced. Because Edward White was sworn before he was excused the defendant argues that jeopardy had attached.

The United States Supreme Court has held "that the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment" (*Benton v. Maryland* (1969), 395 U.S. 784, 794, 23 L. Ed. 2d 707, 716, 89 S. Ct. 2056, 2062), and that "[t]he federal rule that jeopardy attaches when the jury is impaneled and sworn" also applies to the States through the fourteenth amendment. (*Crist v. Bretz* (1978), 437 U.S. 28, 38, 57 L. Ed. 2d 24, 33, 98 S. Ct. 2156, 2162.) However, while the rule of *Crist* is

applicable here, the defendant's rote insistence upon its literal wording is misplaced. All the cases cited by the defendant involve mistrials or cases where the juror was dismissed during trial and do not approach the issue of a juror having been dismissed during *voir dire*. In *Crist*, after the jury was empaneled and sworn and the trial had begun, but before the first witness was sworn, Bretz filed a motion noting an error in the information filed in that case which gave the date of the illegal conduct as one year after its occurrence—and several days after the statute upon which the information was based had been repealed. The prosecution moved to dismiss the information, and the motion was granted. Thereafter a new information was prepared and an entirely new jury sworn. In *Illinois v. Somerville* (1973), 410 U.S. 458, 35 L. Ed. 2d 425, 93 S. Ct. 1066, a mistrial was declared because of an insufficient indictment, with the defendant later charged for the same crime under a valid indictment. The jury had been impaneled and sworn when the mistrial was declared. (*Somerville*, 410 U.S. at 459-60, 35 L. Ed. 2d at 428, 93 S. Ct. at 1068-69.) In both cases the Court held that jeopardy had attached when the first jury was sworn, and thus the second trial placed the defendant in double jeopardy. *Crist*, 437 U.S. at 38, 57 L. Ed. 2d at 33, 98 S. Ct. at 2162; *Somerville*, 410 U.S. at 460, 35 L. Ed. 2d at 428, 93 S. Ct. at 1068-69.

In other cases cited by the defendant, a juror was dismissed during trial for reasons the reviewing court found insufficient. The defendant relies heavily upon *People v. Payton* (1971), 2 Ill. App. 3d 693, 276 N.E.2d 775, but in that case the juror approached the court, after trial had begun and the complaining witness had testified, with information that the juror had not known at the time of *voir dire* but had since discovered. After examining the juror, the court held that the information would not affect the juror's fairness and did not dismiss the juror. The reviewing court held that if he had done so, it might have "furnished a sufficient basis for a subsequent claim of double jeopardy." (*Payton*, 2 Ill. App. 3d at 697-98, 276 N.E.2d at 778.) The cases cited by defendant clearly differ from the instant case, because in all of them the trial had already begun when the juror was excused.

In two Illinois cases where a juror was dismissed before the trial began, the courts have found no double jeopardy. In *People v. Harvey* (1987), 162 Ill. App. 3d 468, 515 N.E.2d 337, after the 12 jurors were selected and sworn but before the alternates could be chosen or the case heard, one juror informed the court that he "was not going to be able to try the case. The parties agreed that juror could be excused, but that juror was not immediately excused." (*Harvey*, 162 Ill. App. 3d at 472, 515 N.E.2d at 340.) The appellate court found it improper for

the trial court to have selected the alternates before selecting a replacement juror. Because the alternates had been selected before the juror was excused, the appellate court said that the trial court should have replaced the excused juror with an alternate juror, as provided in the statute. However, the appellate court also found that there was no discernible prejudice to the defendant because the replacement "juror was with the jury from the time of opening statements until the verdict was accepted." *Harvey*, 162 Ill. App. 3d at 473, 515 N.E.2d at 341.

In a case with even more similar facts, *People v. Watson* (1982), 103 Ill. App. 3d 992, 431 N.E.2d 1350, the court held that the defendant was not harmed when a juror was dismissed after he had been selected and sworn. The court noted that "[a] defendant's right to a trial by an impartial jury does not mean that he is entitled to have a particular person serve on the jury." (*Watson*, 103 Ill. App. 3d at 997, 431 N.E.2d at 1355, citing *People v. Nicholson* (1978), 61 Ill. App. 3d 621, 627, 377 N.E.2d 1063, 1068.) Before the opening statements were made in *Watson*, a juror admitted on inquiry by the court "that he had not mentioned all his convictions [or those of his brother] during *voir dire*" and the trial court excused the juror on a peremptory challenge from the State. (Emphasis in original.) (*Watson*, 103 Ill. App. 3d at 997, 431 N.E.2d at 1354-55.) The appellate court found that the trial court's entertainment and grant of the State's tardy motion was merely harmless error. *Watson*, 103 Ill. App. 3d at 998, 431 N.E.2d at 1355.

Defendant contends that *Watson* is inapplicable because the issue of double jeopardy was not addressed. However, in *Watson* it was the State who challenged the juror's ability to serve, and only upon inquiry by the court did the juror admit his untruthfulness. In the instant case, the juror presented himself to the court as soon after his selection as possible, so that there was no error in timing by an officer of the court.

The trial court here systematically disqualified prospective jurors who admitted during *voir dire* that they or a relative had been accused of a crime. The court asked this question of only 25 of 43 prospective jurors and neglected to ask it of White. White volunteered the information himself after he was preliminarily sworn. He was excused on a peremptory challenge by the State.

Courts in other jurisdictions faced with similar situations also have held that jeopardy does not attach until the jury sits to hear the case. In a Pennsylvania case, a juror was dismissed after all 12 jurors had been selected and sworn but before the alternates were chosen, and

the court noted that jeopardy only attaches when the defendant is "regularly charged with crime before a tribunal properly organized and competent to try [the defendant]." (*Commonwealth v. Almeida* (1949), 362 Pa. 596, 637, 68 A.2d 595, 615, quoting *Commonwealth v. Fitzpatrick* (1888), 121 Pa. 109, 116, 15 A. 466, 467.) Thus, the court said, "[a] jury does not come into being until it is *completely* selected and sworn" (emphasis in original) (*Almeida*, 362 Pa. at 638, 68 A.2d at 616), because "[e]leven jurors, or eight, can give no verdict. \*\*\* [T]he tribunal is unorganized when there are less then twelve." *Commonwealth v. Curry* (1926), 287 Pa. 553, 556-57, 135 A. 316, 317, cited in *Almeida*, 362 Pa. at 637, 68 A.2d at 615.

The California statute is very similar to section 115—4(g) of the Illinois Code of Criminal Procedure and provides that the judge may appoint alternate jurors. (Cal. Penal Code §1089 (Deering 1971).) A long line of cases has interpreted this to mean that when a judge decides to impanel alternate jurors, jeopardy attaches only after the alternate juror is sworn, and thus a defendant is not put into jeopardy when a juror is dismissed after being sworn but before the alternates have been selected. *People v. Burns* (1948), 84 Cal. App. 2d 18, 33, 189 P.2d 868, 872; see also *People v. Caro* (1988), 46 Cal. 3d 1035, 1047, 761 P.2d 680, 686-87, 251 Cal. Rptr. 757, 764; *In re Mendes* (1979), 23 Cal. 3d 847, 855, 592 P.2d 318, 322-23, 153 Cal. Rptr. 831, 835; *People v. Davis* (1972), 27 Cal. App. 3d 115, 119, 103 Cal. Rptr. 494, 497.

In the Federal circuits, dismissal of a juror after the entire panel has been selected and sworn but before any arguments are made or any testimony is given has been held not to create double jeopardy when the juror is replaced by an alternate. *Gillars v. United States* (D.C. Cir. 1950), 182 F.2d 962, 980; *Banks v. United States* (8th Cir. 1953), 204 F.2d 666, 671.

When White was dismissed in the instant case, there were no alternate jurors. After his dismissal, the jury contained only 11 members, not 12. A panel of 11 could not have tried the case, because "[a] jury shall consist of twelve members." Ill. Rev. Stat. 1987, ch. 38, par. 115—4(b).

Jeopardy does not attach until the defendant is at risk of conviction for the crime of which he is accused. (*Breed v. Jones* (1975), 421 U.S. 519, 528, 44 L. Ed. 2d 346, 354, 95 S. Ct. 1779, 1785; *Serfass v. United States*, 420 U.S. at 391-92, 43 L. Ed. 2d at 276, 95 S. Ct. at 1065; *United States v. Green* (D.C. Cir. 1977), 556 F.2d 71, 72.) We find that it was not error for the trial court to complete the jury before selecting the alternates, and the defendant was not subjected to jeopardy at the time Edward White was excused from the jury.

The defendant next argues that the court's admission of evidence of his prior convictions during rebuttal was a reversible error. The State again counters that the defendant did not properly preserve the issue for review by specifying it in the motion for a new trial. "The motion for a new trial shall specify the grounds therefor." (Ill. Rev. Stat. 1987, ch. 38, par. 116—1(c).) Failure to raise an issue in the motion for a new trial acts as waiver of that issue, although there is an exception for "[p]lain errors or defects affecting substantive rights [which] may be noticed although they were not brought to the attention of the trial court." (Ill. Rev. Stat. 1987, ch. 38, par. 116—1(c); *Enoch*, 122 Ill. 2d at 189, 522 N.E.2d at 1131-32.) "[W]here the magnitude of the error may result in a substantial prejudice to the right of the defendant to a fair trial, we have nevertheless on proper occasions considered the error as though it had been properly preserved for appeal." *People v. Manzella* (1973), 56 Ill. 2d 187, 195, 306 N.E.2d 16, 20, *cert. denied* (1974), 417 U.S. 933, 41 L. Ed. 2d 236, 94 S. Ct. 2644; see also *People v. Jackson* (1981), 84 Ill. 2d 350, 359, 418 N.E.2d 739, 743; *People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 233, 238.

■ Here, the evidence of the defendant's prior convictions was offered as rebuttal evidence to challenge his credibility. "Rebuttal evidence is that which is produced to explain, repel, contradict, or disprove evidence given by the defendant, and where the evidence offered in rebuttal is real rebuttal evidence, the fact that it might have been offered in chief does not preclude its admission in rebuttal." *People v. Gray* (1980), 85 Ill. App. 3d 726, 730, 410 N.E.2d 493, 496, quoting *People v. Nettles* (1969), 107 Ill. App. 2d 143, 155, 246 N.E.2d 29, 34.

■ The State offered as rebuttal evidence certified copies of defendant's convictions for two thefts and one burglary, all committed within the 10 years immediately prior to this offense, and argued in response to defendant's objection that the convictions should be admitted because defendant's prior history of theft offenses was highly probative of his credibility and evidenced a continued trend of deceitful conduct. The court overruled defense's objections and found that all three were properly admissible under *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695. In his instructions to the jury, the trial judge below stated that "[e]vidence of a Defendant's previous conviction of an offense may be considered by you only insofar as it may affect his believability as a witness, and must not be considered by you as evidence of his guilt of the offense with which he is charged."

In his exercise of judicial discretion to determine whether the evidence of prior convictions should be admitted into evidence to impeach the defendant's credibility, the *Montgomery* rule requires the court to

consider the probative relevance of the evidence against its prejudice to the defendant. We find that the trial court properly admitted evidence of defendant's prior convictions on rebuttal. As required by *Montgomery*, the convictions occurred within the immediately prior 10-year period, a fact acknowledged as true by defense counsel. A court is not required to articulate its reasoning in reaching the conclusion that the *Montgomery* standard has been met. (*People v. Cornes* (1980), 80 Ill. App. 3d 166, 176, 399 N.E.2d 1346, 1353.) Because the trial court gave a limiting instruction to the jury, we find no error in the court's admission of evidence of defendant's prior convictions on rebuttal.

■ We also find that the record clearly supports defendant's conviction for burglary of the railcar. Agent Nolan testified that he followed the defendant until he lost sight of the defendant when "[h]e took a right, *** onto Wolcott Avenue," and Agent Finger testified that he "observed the subject matching the description given out [over his radio] by Special Agent Nolan exiting the viaduct *** to the corner of Wolcott and 16th." He then gave chase until the defendant surrendered. Both Agents Nolan and Finger testified to the defendant's possession of the vise grips at his arrest, and Officer Jaricz testified as to the procedure for inventorying evidence and bringing that evidence to court. The defendant denied that the vise grips offered in evidence were the ones he used to start his car, even though the officers testified that they were the ones taken from the defendant at the time of his arrest.

The trial court and jury were able to view the witnesses' and defendant's demeanor as they testified and would be best qualified to judge their credibility. The weight of the evidence supports the jury's finding of defendant's guilt of the crime of burglary in this instance and we will not reverse the jury's findings.

Finally, the defendant argues that a 12-year term is excessive. In pertinent part, section 5—5—3.2(b) of the Unified Code of Corrections provides:

> "[T]he following factors may be considered by the court as reasons to impose an extended term sentence under [Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2] upon any offender who was at least 17 years old on the date the crime was committed:
>
> (1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts; ***" Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b).

There is no question here that the defendant was eligible for an extended term: he was 24 years of age at the time of occurrence and had four criminal convictions within the 10-year period immediately prior to this conviction, including a previous Class 2 burglary conviction and a Class 3 felony theft conviction for which he received three years in the penitentiary. However, the defendant argues that the trial judge indicated before the trial a predisposition toward an extended term because he asked whether the defendant was eligible for an extended term and, upon being told he was, noted that "[t]hat is fourteen years." We believe that the trial judge was not in fact predisposed towards an extended term, but rather that he was merely noting the possible effect of the extended-term statute.

■ Absent abuse of discretion, a reviewing court will not modify the sentence imposed by a trial court because the trial court has had the opportunity to observe factors not visible on the record, such as "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age." (*People v. Jackson* (1986), 140 Ill. App. 3d 318, 326, 488 N.E.2d 1056, 1062.) Unless the trial court has abused its discretion, the reviewing court should not alter the sentence imposed. *People v. La Pointe* (1982), 88 Ill. 2d 482, 492-93, 431 N.E.2d 344, 348-49; *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 885.

Four of the cases cited by the defense to support its plea for a reduced sentence are sufficiently distinguishable on their facts from the instant case that they cannot be considered controlling. In *People v. Hudson* (1972), 3 Ill. App. 3d 815, 279 N.E.2d 120, the defendant was 17 years old and faced his first felony conviction. (*Hudson*, 3 Ill. App. 3d at 816, 279 N.E.2d at 120.) In *People v. Oravis* (1980), 81 Ill. App. 3d 717, 402 N.E.2d 297, the defendant burglarized a home to steal property which had belonged to his deceased grandfather; because it was his first offense, he had no record, and "did not threaten or cause physical harm," the court reduced his sentence from six years to four. (*Oravis*, 81 Ill. App. 3d at 719, 402 N.E.2d at 299.)

In *People v. Steffens* (1985), 131 Ill. App. 3d 141, 475 N.E.2d 606, the defendant was 16 years of age, had a good history and positive desire to complete his education, and was not the aggressor; the court reduced his sentence for murder from 30 years to the statutory minimum of 20 years. (*Steffens*, 131 Ill. App. 3d at 153, 475 N.E.2d at 616.) Similarly, in *People v. Gibbs* (1977), 49 Ill. App. 3d 644, 364 N.E.2d 491, cited as the basis for the *Steffens* decision, the court reduced a murder sentence from 50 to 100 years to 15 to 45 years based upon the defendant's youth, lack of previous record, and history of steady

employment and living with his parents, whom he assisted financially. *Gibbs*, 49 Ill. App. 3d at 649, 364 N.E.2d at 494.

All four defendants in the above cases were young, were charged with their first felony (and in two cases, with their first crime), and with one exception had solid backgrounds which reflected a strong possibility of rehabilitation. All are quite different from the defendant in the instant case, who is in his mid-twenties and has a long history of criminal activity.

Two cases heavily relied upon by the defense, *People v. Marshall* (1968), 96 Ill. App. 2d 124, 238 N.E.2d 182, and *People v. Holmes* (1970), 127 Ill. App. 2d 209, 262 N.E.2d 45, predate the extended-term statute and therefore are not appropriate precedent for the defendant's argument against the propriety of the sentence.

■ In the instant case, the sentence of 12 years (less time served) is within the strictures of the extended-sentencing statute (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(a)(4)) and toward the lower end of the prescribed sentences. Defendant has been convicted four times, receiving probation twice and incarcerated twice, once for 30 days for criminal trespass to land and once for three years for burglary.

At sentencing, the trial judge here indicated that he had considered the defendant's background and had read "25 pages of a presentencing investigation." The trial judge indicated that in his opinion the fact that the defendant had recovered nothing by his act was not a mitigating factor and imposed sentence.

As we stated earlier, an appellate court will not alter the sentence imposed by a trial court without clear indication of abuse of discretion or other impropriety. Here, review of the record shows no abuse of discretion by the trial court.

Accordingly, for all of these reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

McNAMARA and QUINLAN, JJ., concur.